**GULF OIL CORPORATION and the Superior Oil Company, Appellants,**

v.

**WESTLAND OIL DEVELOPMENT CORPORATION and L. C. Kung, Appellees.**

No. 6951.

Court of Civil Appeals of Texas, El Paso.

July 15, 1981.

Rehearing Denied Aug. 12, 1981.

Morgan L. Copeland, Louis O. Satterfield, Jr., David Beerbower, Houston, Stubbeman, McRae, Sealy, Laughlin & Browder, Tom Sealy, W. B. Browder, Jr., Marc Skeen, Midland, for appellants.

Bullock, Scott & Neisig, Maurice R. Bullock, Midland, Price & Williams, Jack N. Price, Austin, Reynolds, Allen, Cook, Pannill & Hooper, Inc., William Pannill, Houston, for appellees.

## OPINION

WARD, Justice.

This is an appeal from a summary judgment granted in favor of the Plaintiffs who were seeking a declaration that their certain oil and gas leasehold interest, created by an unrecorded November 15, 1966 letter agreement, covered certain disputed acreage as a matter of law, and that the Defendants were on notice of the letter. On this appeal, the Defendants contend that the Plaintiffs failed to establish as a matter of law that the letter agreement was binding upon them since it was in violation of the Statute of Frauds. They further contend, among other things, that fact issues were present regarding the Defendants' contention that they purchased their disputed leasehold estates in good faith for valuable consideration and without notice of the Plaintiffs' claims. We will reverse and remand.

Mobil Oil Corporation owned oil and gas leases covering twenty-nine sections in the Rojo Caballos Field in Pecos County. By letter agreement dated August 4, 1966, Mobil entered into a farmout agreement with the Plaintiff, Westland Oil Development Corporation, by which Mobil agreed that if Westland complied with the drilling obligation and completed a producing well, Mobil would assign to Westland all of Mobil's leasehold rights in the drill site section and an undivided one-half of its said rights in five other sections.

Thereafter, Chambers & Kennedy, a Midland partnership became interested in the farmout and sought to take over its obligations. An agreement was made, and the Plaintiffs, Westland and its principal officer and owner, L. C. Kung, entered into what later became the controversial November 15, 1966 letter agreement with Chambers & Kennedy. Under the terms of this letter agreement, Chambers & Kennedy assumed all of the obligations imposed by the Mobil farmout, agreed to pay Westland $50,000.00 in cash, and assigned to Westland a $\frac{1}{16}$ of $\frac{8}{8}$ overriding royalty interest on any acreage earned from Mobil, a $\frac{1}{32}$ of the working interest obtained from Mobil pursuant to the Mobil farmout, and a production payment of $150,000.00 payable out of production from the test well.

The sentence in controversy in this letter agreement is as follows:

5. If any of the parties hereto, their representatives or assigns, acquire any additional leasehold interests affecting any of the lands covered by said farmout agreement, or any additional interest from Mobil Oil Corporation under lands in the area of the farmout acreage, such shall be subject to the terms and provisions of this agreement; provided, however, that in no event shall the owners of the working interest under any portion of such acreage be entitled to less than 75% working interest leases.

It is this covenant or obligation which the Plaintiffs seek to enforce against the Defendants. Among other defenses, the Defendants contend that the phrase "or any additional interest from Mobil Oil Corporation under lands in the area of the farmout acreage" does not sufficiently describe the area or acreage to be effective, and is therefore unenforceable under the Statute of Frauds. They further contend that this letter agreement was not recorded, and that the summary judgment proof fails to show as a matter of law that they had knowledge of its contents.

After the execution of the November 15 letter agreement and assignment, the required test well was drilled and the leasehold rights under the Mobil farmout were earned. In accordance with that agreement, Mobil, by instrument dated March 7, 1968, assigned those earned leasehold rights to the six sections to Chambers & Kennedy, to Allied Chemical Corporation as operator, and to several other investors in the well. This assignment provided that as to all the lands and depths assigned, with one exception, the assignment would be subject to all the provisions of a certain operating agreement dated March 1, 1968. This assignment was recorded in the lease records of Pecos County.

The March 1, 1968 operating agreement referred to was executed by Mobil, Allied Chemical and Chambers & Kennedy, and the other owners of the interests in the six sections of land described in the August 4, 1966 farmout agreements. Paragraph 31.B of such operating agreement contained the following:

In the event of any conflict between this Contract and the Farmout Letter Agreement dated August 4, 1966, between Mobil Oil Corporation and Westland Oil Development Corporation as amended by letter dated August 29, 1966, and November 11, 1966, and a Letter Agreement between Chambers and Kennedy and Westland Oil Development Corporation and L. C. Kung dated November 15, 1966, then such prior agreements shall prevail over this Agreement.

The six sections of land referred to above were in a block, with the southernmost three sections being in one tier and being numbered as Sections 23 and 24 in Block 49 and Section 19 in Block 48.

At this point, the two Defendants entered the picture. By letter dated April 18, 1972, Mobil entered into a farmout agreement with Bernold Hanson wherein Mobil agreed that if Hanson commenced a test well on Section 25, Block 49, to a depth sufficient to test the Ellenberger formation and completed it as a producer, Mobil would assign all of its leasehold rights below a depth of 15,000 feet in Section 25, Block 49, and an undivided 60% of its leasehold rights in Sections 19 and 30, Block 48, and Sections 23, 24 and 26, Block 49. It should be noted that Sections 23, 24 and 19 were the three southernmost sections involved in the Mobil-Westland farmout and that Sections 25, 26 and 30 abut those three sections to the south. The farmout agreement with Hanson stated that the lands and leases covering Sections 23 and 24 in Block 49 and Section 19 in Block 48 were covered by the operating agreement dated March 1, 1968 between Mobil, Allied and Chambers & Kennedy, and that any interest earned by Hanson from Mobil in said lands would be subject to said agreement. Hanson then assigned this farmout agreement to the Defendants, Gulf Oil Corporation and The Superior Oil Company. Hanson also obtained similar farmout agreements from Chambers & Kennedy, Allied Chemical, and their other partners, covering part of their leasehold rights in Sections 23 and 24, Block 49, and

in Section 19, Block 48. Most of these other farmout agreements refer to the 1968 operating agreement. The leasehold rights covered by the latter farmouts were part of the rights Chambers & Kennedy and their partners had earned under the terms of the Mobil-Westland farmout. Hanson then assigned these farmouts to the Defendants Gulf and Superior.

In 1972, Superior and Gulf drilled the test well provided for in the last mentioned farmouts, and this well was completed in March, 1973 as a large gas producer. Superior and Gulf thereby earned the acreage under these last farmout agreements, and the earned leasehold estates were assigned directly to Superior and Gulf by Mobil by an assignment dated May 22, 1973. This assignment to Gulf and Superior also provided it was subject to the operating agreement dated March 1, 1968.

When the last assignments from Mobil were brought to the attention of Westland and Kung, they filed suit and sought declaratory judgment that the November 15, 1966 agreement was valid and applied to the interests acquired by Gulf and Superior from Mobil, and would cover any acreage so acquired in the Rojo Caballos Field. The Plaintiffs moved for summary judgment, their motion being based on their letter agreement of November 15, 1966, various instruments, and letters between the parties including those instruments previously referred to, and various depositions, all in support of their claim that the Defendants were on notice of the November 15, 1966 letter agreement, and that, by references made therein to other existing instruments, their interests acquired under the letter agreement covered the interest acquired by Gulf and Superior from Mobil. The grounds asserted by the Plaintiffs in their motion for summary judgment were essentially that their agreement was not subject to the Statute of Frauds since it contained by reference a complete legal description of the Mobil leases in the Rojo Caballos Field; that the expression "lands in the area of the farmout acreage" as a description were not open to challenge by the Defendants because they received the benefits of the

agreement and hence were estopped; and that the Defendants purchased their interests with full notice of the contents of the 1966 letter agreement. Thereafter, the trial Court granted the Plaintiffs' motion for summary judgment, and declared that the agreement between the Plaintiffs and Chambers & Kennedy dated November 15, 1966 was valid and in full effect, and applied to the interests and acreage acquired by the Defendants and the Plaintiffs were vested with title to those interests as set forth in the agreement dated November 15, 1966.

Rule 166–A, Tex.R.Civ.P., as amended in 1978, still requires that the plaintiff/movant established its entitlement to a summary judgment on the issues presented to the trial court by conclusively proving all essential elements of its cause of action as a matter of law. However, the non-movant/defendant must expressly present to the trial court any reasons seeking to avoid the movant's entitlement, such as the affirmative defenses set out by Rule 94, Tex.R.Civ.P., and has the burden to present the summary judgment proof when necessary to establish a fact issue raising those affirmative defenses. *City of Houston v. Clear Creek Basin Authority*, 589 S.W.2d 671 (Tex.1979). Thus, the burden was on the Defendants in this case to both plead and present summary judgment proof to establish a fact issue on the affirmative defense of Statute of Frauds. Rule 94, Tex.R.Civ.P.; 2 McDonald, Texas Civil Practice *Pleading: Answer* secs. 7.34.2, 7.44 (rev. 1970). The defense of innocent purchaser for value has likewise been treated as an affirmative defense. However, when, as here, a plaintiff claims an equitable title against a subsequent purchaser of the legal title, that plaintiff assumes the burden of showing that the latter was not an innocent purchaser. *Valley Ready-Mix Concrete Co. of McAllen v. Valley State Bank*, 227 S.W.2d 231 (Tex.Civ.App.—San Antonio 1950, no writ); 59 Tex.Jur.2d *Vendor and Purchaser* secs. 808–813.

■ In the light of these rules, we will first dispose of the Defendants' groups of points asserting error of the trial Court in failing to hold that Paragraph 5 of the November 15 letter agreement was so general and incomplete as to be void and unenforceable under the Statute of Frauds and Statute of Conveyances. The clause "lands in the area of the farmout acreage" standing alone is uncertain in the description of the property to be conveyed and therefore unenforceable under the Statute of Frauds. *Wilson v. Fisher*, 144 Tex. 53, 188 S.W.2d 150 (1945). The Plaintiffs attempt to overcome this defect by claiming that the "area of the farmout acreage" is equivalent to the Rojo Caballos Field, and that an adequate description of that field is found in existing documents referred to in the November 15 letter agreement. They rely on the rule that, to be sufficient, the writing must furnish within itself, or by reference to other identified writings then in existence, the means or data by which the land to be conveyed may be identified with specific certainty. *Jones v. Kelley*, 614 S.W.2d 95 (Tex.1981); *Morrow v. Shotwell*, 477 S.W.2d 538 (Tex.1972); *Wilson v. Fisher, supra*, 188 S.W.2d at 153. They do this by first showing that the caption of the November 15, letter agreement is:

Re: Rojo Caballos Prospect Pecos County, Texas

and the first paragraph of the November 15 letter agreement reads: "Reference is made to Farmout Agreement dated August 4, 1966, from Mobil Oil Corporation to Westland Oil Development Corporation, . . . ." Westland then points to the August 4, 1966 farmout from Mobil to Westland, and says that Paragraph XI thereof provides that "[t]he leases covered by this agreement are subject to an unrecorded contract styled S–3026 dated March 31, 1961, by and between Socony Mobil Oil Company, Inc. and El Paso Natural Gas Company," the latter being a 20–year gas purchase contract covering Mobil's twenty-nine sections. The unrecorded gas purchase contract has attached to it an Exhibit "A." On said Exhibit "A," there appear the words:

Rojos Caballos Field Pecos County, Texas

and a full legal description of Mobil's Rojo Caballos acreage. The argument is then made that Exhibit "A" is a sufficient legal description of the land situated in the Rojo Caballos Field, which in turn is the same thing as the Rojo Caballos Prospect, as mentioned in the November 15 letter.

■ The rule relating to admissibility of parol evidence to aid descriptions in contracts for the conveyance of land is found in *Wilson v. Fisher, supra*, 188 S.W.2d at 152.

The certainty of the contracts may be aided by parol only with certain limitations. The essential elements may never be supplied by parol. The details which merely explain or clarify the essential terms appearing in the instrument may ordinarily be shown by parol. But the parol must not constitute the framework or skeleton of the agreement. That must be contained in the writing. Thus, resort to extrinsic evidence, where proper at all is not for the purpose of supplying the location or description of the land, but only for the purpose of identifying it with reasonable certainty from the data in the memorandum. [Citation omitted].

We hold that the attempt to expand the meaning of "area of farmout acreage" to an indefinite "Rojo Caballos Prospect," and then to a further indefinite "Rojo Caballos Field," with an attempt then to make the latter definite by a limit of only that acreage which was then owned by Mobil, would effectively abrogate the Statute of Frauds. The cross-references neither adopt the other writing nor do they relate to the same transaction. *Owen v. Hendricks*, 433 S.W.2d 164, 167 (Tex.1968). Under the summary judgment proof presented to us, we sustain Gulf's first, second, and third points and Superior's first and second points.

■ The Defendants next present points urging that fact issues are present which render the letter agreement unenforceable because the Defendants were innocent purchasers for value without notice. The Defendants assert that certain affidavits and other summary judgment proof established

their contention that they neither had actual nor constructive notice of the letter agreement. In this connection, the Plaintiffs concede that the agreement was unrecorded and that the Defendants had never seen the contents of that letter. However, they do contend that the Defendants were charged with knowledge of the letter agreement by virtue of the various references made in the Defendants' chain of title to the operating agreement dated March 1, 1968 which in turn made explicit reference to the 1966 Mobil farmout and to the letter agreement of November 15.

The Defendants argue that at least a fact issue is presented as to their actual notice of the letter, even actual notice in the legal sense as it was defined in *Portman v. Earnhart*, 343 S.W.2d 294, 297 (Tex.Civ.App.—Dallas 1960, writ ref'd n.r.e.), where it was held:

'In common parlance "actual notice" generally consists in express information of a fact, but in law the term is more comprehensive. In law whatever fairly puts a person on inquiry is sufficient notice, where the means of knowledge are at hand, which if pursued by the proper inquiry the full truth might have been ascertained. Means of knowledge with the duty of using them are in equity equivalent to knowledge itself. Where there is a duty of finding out and knowing, negligent ignorance has the same effect in law as actual knowledge. So that, in legal parlance, actual knowledge embraces those things of which the one sought to be charged has express information, and likewise those things which a reasonably diligent inquiry and exercise of the means of information at hand would have disclosed. Actual notice is always a question of fact.' *Hexter v. Pratt*, Tex.Com.App., 10 S.W.2d 692, 693.

' "Actual Notice" literally means express or positive personal information or knowledge directly communicated to the person to be affected. In a more comprehensive sense, the term also embraces knowledge of all those facts which reasonable inquiry would have disclosed, the duty of inquiry extending only to matters that are fairly suggested by the facts really known.' *Flack v. First National Bank of Dalhart*, 148 Tex. 495, 226 S.W.2d 628, 631. Quoting from 31 Tex. Jur. p. 359–360.

*See also: Champlin Oil & Refining Company v. Chastain*, 403 S.W.2d 376, 388 (Tex. 1965); *Flack v. First Nat. Bank of Dalhart*, 148 Tex. 495, 226 S.W.2d 628, 631 (1950).

To impute notice to the Defendants of the contents of the November 15, 1966 letter agreement for the purposes of the summary judgment, the Plaintiffs rely upon the multiple links in the chain which include the reference made in the March 1, 1968 operating agreement to the November 15 letter agreement, and which additionally provides that, in the event of any conflict with the operating agreement, the prior letter agreement shall prevail. The problem facing the Plaintiffs is that they are asserting that the proof establishes as a matter of law that the Defendants had the duty to conduct complete inquiry as to both the existence and contents of each of the documents referred to. As an example of the difficulty facing the Plaintiffs, the normal function of an operating agreement is to explain in detail the operation between the various interests in the development of a tract of land for the economical production of the minerals. Reference as to the superiority of the letter agreement over its terms could well have alerted a diligent purchaser of the title that such a letter only controlled operations and in no way affected title. We hold a question of fact is present under the evidence presented at this time as to what a reasonable purchaser would have done under the circumstances, and the summary judgment was improper. Ordinarily, summary judgment will not be " 'awarded where the issue is inherently one for a jury or judge trial, as generally in instances of intent; exercise of judgment, of discretion, of reasonable care; . . . or the like.' " 4 McDonald, Texas Civil Practice *Judgments* sec. 17.26.12 at 177 (rev. 1971). We sustain Gulf's fifth and sixth points and Superior's third and fourth points.

Other theories which might or might not sustain the Plaintiffs' position are presented by the briefs. These will not be discussed as we have determined that fact issues are present in the record as made, and those additional theories depend either in whole or in part on our having overruled the points which we have discussed.

The judgment of the trial Court is reversed and the cause is remanded for trial.