**W. T. CARTER & BRO. et al. v. DAVIS et al.**

**No. 2787.**

Court of Civil Appeals of Texas. Beaumont.

Nov. 27, 1935.

Rehearing Denied Dec. 4, 1935.

Baker, Botts, Andrews & Wharton, of Houston, and M. M. Feagin, of Livingston, for appellants.

Andrews, Kelley, Kurth & Campbell, of Houston, and S. W. Marshall, of Dallas, for appellees.

O'QUINN, Justice.

May 18, 1933, Wirt Davis brought this suit in the special district court of Polk county against W. T. Carter & Bro. and other defendants. The suit was in the nature of trespass to try title and had for its purpose the recovery of an undivided one-half interest in the oil, gas, and other minerals in six tracts of land in Polk county, Tex.: (1) An undivided one-half (738 acres) of the Hezekiah Williams one-third league survey; (2) an undivided one-half (738 acres) of the John Swinney one-third league survey; (3) an undivided 553 acres out of the Wm. Coleman 1,476-acre survey; (4) a tract of 154 acres out of the Elisha Stephenson survey; (5) a tract of 409 acres out of the Elisha Stephenson survey.

December 19, 1933, Wycliff Skinner and others intervened, claiming the same mineral interest in said land. The interveners are all of the legatees and heirs of Helen B. Hardin and Mrs. Cynthia A. Skinner. Helen B. Hardin was the sole legatee of Wm. F. Hardin.

W. T. Carter & Bro. were the principal defendants. They disclaimed as to the fourth, fifth, and sixth (the Stephenson) tracts described in the petitions of plaintiff and interveners. They also disclaimed as to a tract of 12.58 acres of the John Swinney survey, and as to all of the Wm. Coleman 1,476-acre survey, except a specific 710.32 acres.

The defendants C. J. Gerlach & Bro. disclaimed as to everything except a 1/64th royalty interest in the oil, gas, and minerals in a specific 40 acres of the Hezekiah Williams survey. The defendants R. H. Jones, G. C. Lowe, and S. L. Birch answered by general demurrer, general denial, and plea of not guilty. It developed they claimed only the oil, gas, and other minerals in a specific 10 acres of the Hezekiah Williams survey.

The only interest the defendants Harrison Oil Company and the J. S. Abercrombie Company ever had was under lease executed by W. T. Carter & Bro., which pending the suit lapsed, and they were therefore no longer regarded as real parties to the suit, though judgment was rendered against them.

The case was tried to the court without a jury, and judgment rendered in favor of plaintiff Wirt Davis for the minerals in an undivided 92.25 acres of the William Coleman survey, and in favor of the interveners for the minerals in all of the other tracts in which the mineral rights were contested. That judgment is before us for review. The appeal is by W. T. Carter & Bro., C. J. Gerlach & Bro., and R. H. Jones, G. C. Lowe, and J. L. Birch, and involves the minerals in an undivided one-half of the Hezekiah Williams 1,476 acres; and undivided one-half of the John Swinney 1,476 acres (less 12.58 acres); and an undivided 553 acres of the William Coleman 1,476-acre survey of which survey W. T. Carter & Bro. claim a specific 710.32 acres.

By agreement of parties, the title to the minerals involved on January 1, 1904, was vested in Helen B. Hardin, Cynthia A. Skinner, and husband, John F. Skinner, and Wm. F. Hardin.

On October 25, 1904, Helen B. Hardin conveyed to Wirt Davis the following tracts of land situated in Polk county, Tex.: (a) An undivided 738 acres out of the Hezekiah Williams one-third of a league survey; (b) an undivided 738 acres out of the John Swinney one-third of a league survey; and (c) a tract of 249 acres out of the Elisha Stephenson survey. In this deed Helen B. Hardin reserved all of the minerals in, on, and under all of said land. This deed was never recorded.

On September 26, 1904, Mrs. Cynthia A. Skinner, and her husband, John F. Skinner, conveyed to Wirt Davis the following tracts of land situated in Polk county, Tex.: (a) An undivided 184½ acres out of the William Coleman survey, and (b) a tract of 154 acres out of the Elisha Stephenson survey. In this deed Mrs. Skinner and her hus-

band reserved all of the minerals in, on, and under all of said land. This deed was never recorded.

On October 22, 1904, W. F. Hardin (Wm. F. Hardin) conveyed to Wirt Davis the following tracts of land in Polk county, Tex.: (a) An undivided 184½ acres out of the William Coleman survey, and (b) a tract of 409 acres out of the Elisha Stephenson survey. In this deed W. F. Hardin reserved one-half of all the minerals in, on, and under said land, the other one-half passing to Wirt Davis. This deed was never recorded.

, October 28, 1904, Wirt Davis conveyed to Wm. Carlisle & Co. all the lands mentioned in the three preceding deeds. In this deed Wirt Davis reserved all of the minerals in, on, and under said land. This deed was immediately filed for record and duly recorded.

October 25, 1909, Helen B. Hardin and Cynthia A. Skinner and her husband, J. F. Skinner, made deed to Wm. Carlisle & Co. referring to the Davis deed of October 28, 1904, and describing the same land as in the deed from Wirt Davis to said Wm. Carlisle & Co. This deed was duly recorded.

December 1, 1909, Wm. Carlisle & Co. conveyed to West Lumber Company, in addition to other lands, the same and all of the land conveyed to Carlisle & Co. by Wirt Davis. This deed was duly recorded.

October 18, 1926, West Lumber Company conveyed to W. T. Carter & Bro. numerous tracts of land, including the land sold by Wirt Davis to Carlisle & Co., which was conveyed by Carlisle & Co. to West Lumber Company.

Appellants insist that the first four deeds above mentioned (deeds from Helen B. Hardin, Cynthia A. Skinner, and husband, J. F. Skinner, to Wirt Davis, and W. F. Hardin to Wirt Davis, and from Wirt Davis to Carlisle & Co.) are not in their chain of title. Appellees deny this contention, and say that all of said deeds are in appellants' chain of title.

Appellants claim the minerals reserved in the unrecorded deeds from Helen B. Hardin, Mrs. Cynthia A. Skinner, and her husband, John F. Skinner, and Wm. F. Hardin, to Wirt Davis, of date October 25, 1904, September 26, 1904, and October 22, 1904, respectively, passed to Wm. Carlisle & Co. by virtue of the deed from Helen B. Hardin and Cynthia A. Skinner and her husband, J. F. Skinner, to Wm. Carlisle & Co. of date October 25, 1909. Appellees claim that said minerals did not pass by virtue of said deed, but that same remained in Helen B. Hardin, Cynthia A. Skinner, and her husband, J. F. Skinner, and passed by inheritance to appellees.

Appellants present two assignments of error (to which and in connection with which ten subordinate propositions are discussed in their brief). They are:

"First. The deed of October 25, 1909, by its express terms conveyed the oil, gas and minerals in the lands described therein and here involved, and there was no reservation or exception of same contained in said deed. Therefore, the trial court erred in holding that said deed did not convey said oil, gas and minerals."

"Second. The grantors in the deed of October 25, 1909, were admittedly the owners of the oil, gas and minerals in the lands therein described prior to its execution, and as said deed conveyed all of their right, title and interest in said lands, without any reservation or exception, the same passed all title of the grantors in said oil, gas and minerals in controversy, and as appellees were claiming under said grantors they had no title on which to recover."

It is seen that appellants ignore the unrecorded deeds to Wirt Davis, and the deed from Davis to Wm. Carlisle & Co., and begin their chain of title with the deed of October 25, 1909, from Helen B. Hardin and Cynthia A. Skinner and her husband, J. F. Skinner, to Wm. Carlisle & Co., said deed coming from the parties in whom, it was agreed, the title to the lands involved rested January 1, 1904.

The deed in question reads:

"Know all men by these presents: That, whereas, on October 28, 1904, by deed duly recorded in Vol. 23, pages 193-8 Deed Records Polk County, Texas, Wirt Davis conveyed to Wm. Carlisle & Company the tracts and surveys of land hereinafter described; and,

"Whereas, at the time of said conveyance the title to the said lands· was in Miss Helen B. Hardin, Mrs. Cynthia A. Skinner and her husband, J. F. Skinner, and W. F. Hardin; and,

"Whereas, we, the said parties above named· have received from the said Wirt Davis all of the purchase money paid to ·him by Wm. Carlisle & Company for said lands, and in order to make the record to said lands perfect in the said Wm. Carlisle & Company, we hereby join in this deed to Wm. Carlisle & Company, thus supplying the missing link in the chain of title to said tracts of land hereinafter described;

"Now, therefore, We, Miss Helen B. Hardin of Liberty County, Texas, who conveys for herself and the interest of W. F. Hardin, as per will and probate· thereof conveying to me the said Helen B. Hardin all of the interest of W. F. Hardin, and Mrs. Cynthia A. Skinner, joined by her husband, ·J. F. Skinner, of Lampasas County, Texas, for and in consideration of the sum of $10.00 and the consideration named above to us paid by Wm. Carlisle & Company of .Atchison County, Kansas, the receipt of which is hereby acknowledged, have granted, sold, remised and released and forever quit-claim, and by these presents do grant, sell, remise, release and forever quit-claim unto the said Wm. Carlisle & Company and their assigns all of the right, title and interest in and to those certain lots, tracts and ·parcels of land described as follows, as per deed from Wirt Davis of date October 28, 1904" (and then follows description of the several tracts of land).

After the description of the first and second tracts is this statement: "Above described two tracts of land being the same conveyed to Wirt Davis by John F. Skinner and wife by· deed dated the 26th day of September, 1904." The habendum clause in said deed is:

"To have to hold the above described premises together with all and singular, the rights and appurtenances thereto in any wise belonging unto the said Wm. Carlisle & Company or their heirs forever, so that neither the vendors herein nor their heirs nor any other person or persons for them or in their name or behalf shall or will hereafter claim or demand any right or title to the aforesaid premises, or any part thereof, but they and every one of them, by these presents shall be excluded and forever barred.

"[Signed] Mrs. Cynthia A. Skinner
"J. F. Skinner
"Helen B. Hardin."

The parties are agreed that the correct decision of the case depends upon the effect given to the above deed, as interpreted and construed in the light of all the circumstances, as they existed at the date of the deed.

 Whether the deed conveyed to Carlisle & Co. the minerals in the land depends upon the intention of the grantors. .This intention must be discovered not from any particular part of the deed, but from all of its four corners, interpreted in the light of all the attending circumstances. Parol evidence was admitted in regard to the intention of the parties in its execution and of the circumstances throwing light on the cause of its execution.

The record .discloses that Helen B. Hardin, Mrs. Cynthia A. Skinner, and her husband, J. F. Skinner, and W. F. Hardin conveyed the lands, containing the minerals in controversy, to Wirt Davis reserving the minerals. The deeds to Davis were not put of record. Davis within about a month after purchasing the land conveyed· same to Carlisle & Co. reserving all of the minerals. Carlisle & Co. were in the lumber manufacturing business for which reason they purchased the lands from Davis. They held the land for some five years and then on December 1, 1909, sold all of their mill properties, including lands, to West Lumber Company. It is apparent that when the deal with the West Lumber Company was pending it was discovered that no conveyance to Davis of the lands involved were of record, and that at said time the deeds to him could not be found, and that West Lumber Company would not accept the land with the title in this condition, and that this being made known to Davis' grantors, they executed the deed of October 25, 1909, to Carlisle & Co., as they recited in said deed, to perfect the record title to the land in Carlisle & Co., and to supply the missing link in the chain of title. Almost immediately after, on December 1, 1909, Carlisle & Co. closed the deal with the West Lumber Company, and on said date conveyed all of its holdings, including the lands involved, to the West Lumber Company. West Lumber Company October 18, 1926, sold its entire holdings to appellants W. T. Carter & Bro.,

who were also engaged in the lumber manufacturing business.

In the record the parties stipulate that on January 1, 1904, the grantors in the deed of October 25, 1909, were the owners of the minerals involved. The deed of October 25, 1909, is not in the form of usual conveyances by deed, but begins with several *whereases* expressing the reasons for the execution of the deed. The first states that Wirt Davis by deed of date October 28, 1904, had conveyed the land involved to Carlisle & Co., which deed was of record, giving the book and pages of the record. The second states that at the time Wirt Davis conveyed the land to Carlisle & Co., the title to said land was in them, the grantors. The third states (a) that they, the grantors, had received from Wirt Davis all of the consideration paid him for the land by Carlisle & Co., and (b) "in order to make the record title to said lands perfect in the said Wm. Carlisle & Co., we hereby join in this deed to Wm. Carlisle & Co., thus supplying the missing link in the chain of title to said tracts of land hereinafter described: Now, therefore," and then follows the deed which stated the consideration to be "$10.00 and the consideration named above." The deed was what is known as a "quitclaim deed" and described the land as in the Wirt Davis deed.

This deed referred to the Wirt Davis deed, giving the book and page of its record, and while appellants insist that the Davis deed to Carlisle & Co. is no part of their chain of title, we think it is so, and, to say the least, the deed under consideration directed the attention of appellants to the Davis deed which reserved all the minerals in the land, and put them on notice as to such reservation.

Appellants contend that the deed here being construed was the beginning of their chain of title, and since it did not make any specific reservation of any minerals, but conveyed "all of the right, title and interest in and to those certain lots, tracts and parcels of land described as follows, as per deed from Wirt Davis of date October 28, 1904," it conveyed to Carlisle & Co. all of the minerals. They insist that this must be true because the deed recites that the "title to the said land" was at the time of the conveyance by Wirt Davis to Carlisle & Co., in the grantors. We think this contention, in view of the circumstances surrounding the execution of the deed, is without merit. The Davis deed to Carlisle & Co. conveyed all the lands in controversy, reserving all the minerals in said lands. This deed was duly recorded. It was referred to in the deed of October 25, 1909, by virtue of which appellants claimed the minerals. At the end of the description of the first two tracts in this deed, it said the first two tracts were the same land conveyed by Skinner and wife to Wirt Davis thus showing that the title to those tracts was in Davis by conveyance from Skinner and wife on September 26, 1904. This was notice of the prior conveyance to Davis and inquiry would have informed grantors that all of the land in controversy had been conveyed to Davis.

Also the grantors in the October 25, 1909, deed to Carlisle & Co., in the conveying clause of the deed said they conveyed "all of the right, title and interest in and to those certain lots, tracts and parcels of land described as follows, *as per deed from Wirt Davis of date October 28, 1904."* We think it plain that they undertook to convey only *the land* as Davis had conveyed *same* to Carlisle & Co. In the deed from Davis he had reserved all the minerals. He conveyed only the surface estate—the land. Grantors knew that their deeds to Davis had not been placed of record, and that there was a missing link in the chain of title to Carlisle & Co. They said in their deed that it was executed by them for the purpose of supplying this missing link in the chain of title. It was for the purpose of placing the record title to the *land conveyed by Davis to Carlisle & Co.* in said company. The Davis deed to Carlisle & Co. *conveyed the land,* not the minerals. They conveyed the *same interest as that conveyed by Davis* to supply the missing link in the title to the land conveyed by Davis.

Again, the deed of October 25, 1909, was based upon a consideration of "$10.00 and the consideration named above"—the above consideration was the matters stated in the several introductory paragraphs (whereases) in the instrument which had for its purpose the curing of the defect in the *record title to the land conveyed to Carlisle & Co. by Davis.* We think it could not be said that the grantors in the deed would or did convey more than 2,500 acres of timbered land and all the minerals in same for a consideration of $10. To do so, under the circumstances surrounding

the transaction, would be to say that they did that which they were under no obligation to do, donated the whole premises, land and minerals, to Carlisle & Co., in the face of their stated reason for the execution of the deed which was to convey only the right, interest, or title they *apparently* had in the *estate conveyed by Davis,* and that this was done for the purpose of *supplying the "missing link"* in the chain of title from Davis to Carlisle & Co.

Further, we think the deed on its face shows that the grantors in the October 25, 1909, deed to Carlisle & Co. intended only to make the record title *to the land conveyed by Davis* perfect, for, after reciting the reasons for the deed, they begin the conveying clause with the words: "Now, Therefore, We," etc. What do these words mean? They could have only one meaning, and that was that for the reasons and facts first stated, they executed the deed, and no other or further reasons or purpose can be read into the instrument, or inferred relative thereto.

Moreover, the deed of October 25, 1909, to Carlisle & Co. was a quitclaim deed. Since it was unquestioned that they were the record owners of the land and minerals on January 1, 1904, if they had not parted with their title to the land or the minerals on October 25, 1909, and if they were in fact intending to convey the land and the minerals to Carlisle & Co., why did they execute a quitclaim deed to same? Is it not more reasonable to presume that if they were, for what they deemed sufficient and adequate consideration, conveying the lands and the minerals to Carlisle & Co., they would have executed a regular warranty deed to same. There is nothing to suggest a reason for the almost entire want of any consideration and for the quitclaim deed, other than as shown in the reasons stated in the forewords of the deed, that is, to perfect the record title in Carlisle & Co. to the *land conveyed by Davis;* they themselves having theretofore parted with same. What we have said is in line with and has full support in Humphreys-Mexia Co. et al. v. Gammon et al., 113 Tex. 247, 254 S.W. 296, 29 A.L.R. 607. See, also, Sanborn v. Crowdus Bros. & Co., 100 Tex. 605, 102 S.W. 719.

Our conclusion is that the grantors in the deed of October 25, 1909, did not intend to convey and did not convey to Carlisle & Co. the oil, gas, and minerals in the land therein described, and so that

neither Carlisle & Co. nor any of their successors in title to the lands so conveyed acquired any title to any of the oil, gas, and minerals in said land. But it is insisted by appellants that the deeds from Helen B. Hardin, Cynthia A. Skinner, and husband, and W. F. Hardin, to Wirt Davis, dated October 25, 1904, and September 26, 1904, and October 22, 1904, respectively, if said deeds were ever delivered, did not create a severance of the mineral estate and the surface of the land estate, because said deeds were never placed of record, and that it was shown that appellants W. T. Carter & Bro. purchased the lands in question (including the minerals in controversy) for a valuable consideration and without notice of said unrecorded deeds.

 This contention is not sound. The deeds from Helen B. Hardin, Mrs. Cynthia A. Skinner, and her husband, J. F. Skinner, and W. F. Hardin, to Wirt Davis reserved the minerals and so did effect a severance of the minerals from the surface estate, and the fact that said deeds were never recorded did not affect their validity. Likewise the deed from Wirt Davis to Carlisle & Co. reserved the minerals, conveying only the surface estate. This deed was of record. The deed from Helen B. Hardin and Mrs. Cynthia A. Skinner and her husband, J. F. Skinner, to Carlisle & Co., dated October 25, 1909, referred to the recorded deed from Davis to Carlisle & Co., and said deed thus became a part thereof to the extent necessary to clarify the provisions of the October 25, 1909, deed to Carlisle & Co. In other words, the terms of the deed from Wirt Davis to Carlisle & Co., dated October 28, 1904, in which the minerals were reserved, are incorporated in the deed from Helen B. Hardin and others to Carlisle & Co. of date October 25, 1909, because it was referred to and made the basis of the deed being then executed.

 We think it should be said that Carlisle & Co. took the deed from Helen B. Hardin and Cynthia A. Skinner and husband of date October 25, 1909, with full knowledge of its purpose to perfect in said company *the title only to the land conveyed it by Davis,* which the reference to the Davis deed showed together with the other recitations in the introductory part of the deed. Both deeds were links in the chain of title of Carlisle & Co. to the estate—the land only—conveyed to

it by Davis, and so were links in appellants' chain of title, and thus notice to them that they were acquiring only the surface estate and not the minerals. They must take notice of all facts disclosed by either of said deeds and any references therein, which were a part thereof, and this is true though they may never have read these deeds, and never had any actual knowledge of their contents. Wallace v. Hoyt (Tex.Civ.App.) 225 S.W. 425, 429 (writ refused).

In Loomis v. Cobb (Tex.Civ.App.) 159 S.W. 305, 307 (writ refused), it is said: "It is a familiar and thoroughly well-settled principle of realty law that a purchaser has constructive notice of every matter connected with or affecting his estate which appears by *recital, reference, or otherwise* upon the face of any deed which forms an essential link in the chain of instruments through which he deraigns his title. The rationale of the rule is that any *description, recital of fact, or reference* to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of all the matters referred to and affecting the estate is obtained. Being thus put upon inquiry, the purchaser is presumed to have prosecuted it until its final result and with ultimate success." (Italics ours.)

The following facts, we think, were sufficient to put appellants upon inquiry as to the estate Carlisle & Co., their predecessors in title, acquired from Davis:

(a) The deed of October 25, 1909, from Helen B. Hardin and Mrs. Cynthia A. Skinner and her husband to Carlisle & Co. described the property conveyed as "all of the right, title and interest (of the grantors) in and to those certain lots, tracts and pracels of *land* described as follows, *as per deed from Wirt Davis of date October 28, 1904.*" This deed was of record and its record referred to. The Davis deed reserved all the minerals.

(b) The deed, October 25, 1909, in describing the land after describing the first and second tracts, used this language: "Above described two tracts of land being the same conveyed to Wirt Davis by John F. Skinner and wife by deed dated the 26th day of September, 1904." This was the *unrecorded* deed from Cynthia A. Skinner and husband, John F. Skinner, to Wirt Davis, and which deed reserved to the grantors all of the minerals in the land they conveyed. This recital put Carlisle & Co. and all subsequent holders under it upon notice of the unrecorded deed and of the mineral reservations therein. Inquiry of Davis or of the grantor would, if sufficiently prosecuted, have informed all subsequent holders of the existence of all of the unrecorded deeds and of their contents.

(c) The deed mentioned and referred to above, together with the recital in the deed of October 25, 1909, that it was executed for the purpose of perfecting the record title in Carlisle & Co., and of supplying the missing link in the chain of title from Davis to Carlisle & Co., was sufficient to put appellants upon notice that the grantors in said deed had prior thereto conveyed the *land* in question to Davis, and that because of the deeds to Davis not being recorded, they were executing their deed to Carlisle & Co. for the purpose *only* of perfecting the record title to the land in Carlisle & Co., and proper inquiry would have acquainted any subsequent holder of the title with all of the facts of Davis' title to the *land,* and that he did not own the minerals therein, but that same had been reserved to Davis' grantors in their deeds to him.

(d) The recital in the deed of October 25, 1909, that grantors therein conveyed the land described, as per deed from Wirt Davis of date October 28, 1904, which deed was recorded and its record referred to, put appellants upon notice that grantors conveyed *only the lands conveyed by Davis,* which was the surface estate, and that grantors were not undertaking to convey an additional and different estate.

(e) The fact that only $10 consideration (for more than 2,500 acres of land and all the minerals therein) was recited in the deed, not to consider the mentioned consideration of supplying the missing link in the Carlisle & Co. title, was sufficient to put appellants upon inquiry as to the circumstances attending the execution of the deed, which, if pursued, would have informed appellants that in fact the only purpose of the deed was to perfect the Davis title in Carlisle & Co., and that only the *estate conveyed by Davis* was intended to be conveyed, and that was the surface estate and not the minerals which had been reserved by said grantors in their

deeds to Davis and by Davis in his deed to Carlisle & Co.

(f) The deed from Helen B. Hardin and others to Carlisle & Co., dated October 25, 1909, recited that Carlisle & Co. had paid to Wirt Davis all of the purchase money for the land conveyed to said company by his deed of date October 28, 1904, which recitation was sufficient to put a reasonably prudent person upon inquiry to determine the nature, extent, and character of Wirt Davis' interest in the land conveyed.

(g) The deed from Carlisle & Co. to West Lumber Company, dated December 1, 1909, expressly referred to the deed and its record from Davis to Carlisle & Co. of date October 28, 1904, and such reference was sufficient to put a reasonably prudent person upon inquiry, which, if prosecuted, would have disclosed that Davis had reserved all the minerals.

Furthermore, it appears without dispute that appellants W. T. Carter & Bro. made no examination of the deed records of Polk county prior to their purchase of the lands in question from West Lumber Company, nor did they examine any abstracts of title covering the lands purchased from West Lumber Company, but waived such examinations and in lieu thereof accepted the personal warranty of Jim West of the West Lumber Company as to the title of such purchased property. Therefore, appellants W. T. Carter & Bro. were not innocent purchasers for value without notice for in that if appellants had availed themselves of the means or information at hand and of which, as a matter of law, they were required to take notice, they would have learned that appellees owned, or in any event claimed, the title to the minerals involved.

Moreover, the record discloses that A. L. Carter, who represented W. T. Carter & Bro. in the purchase from West Lumber Company, personally knew Wirt Davis at the time W. T. Carter & Bro. purchased the property in controversy from West Lumber Company, and an inquiry made of Wirt Davis would have readily disclosed that he and the other appellees were claiming title to the minerals here involved.

All assignments of error have been considered, and none of them showing reversible error, the judgment should be affirmed, and it is so ordered. Affirmed.