WESTLAND OIL DEVELOPMENT
CORPORATION et al., Petitioners,

v.

GULF OIL CORPORATION et
al., Respondents.

No. C-743.

Supreme Court of Texas.

June 9, 1982.

Rehearing Denied Sept. 22, 1982.

Bullock, Scott & Nesig, Maurice N. Bullock, Midland, Reynolds, Allen, Cook, Pannill & Hooper, William Pannill, Houston, Jack N. Price, Austin, for petitioners.

Stubbeman, McRae, Sealy, Laughlin & Browder, Tom Sealy, W. B. Browder, Jr. and Marc Skeen, Midland, Morgan L. Copeland and Susan R. Sewell, Houston, for respondents.

McGEE, Justice.

This case involves the adjudication of the parties' interests in certain oil and gas leases located on six sections of land in Pecos County, Texas. We must determine the effect that a letter agreement, dated November 15, 1966 (hereinafter referred to as "the November 15, 1966, letter agreement"), had upon the respective interests in those leases. The trial court granted summary judgment in favor of Westland Oil Development Corporation and L. C. Kung (hereinafter referred to as "Westland"), petitioners herein and plaintiffs in the trial court, holding that Gulf Oil Corporation and the Superior Oil Company (hereinafter referred to as "Gulf and Superior"), respondents herein and defendants in the trial court, were on notice as a matter of law of the November 15, 1966, letter agreement, and that said agreement was enforceable as to all six sections. The court of appeals reversed the judgment of the trial court and remanded the cause for a determination of the notice issue. 620 S.W.2d 765. We reverse the judgment of the court of

appeals and render judgment that Gulf and Superior were on notice of the November 15, 1966, letter agreement as a matter of law, and that the statute of frauds does not prohibit enforcement of said agreement as to three of the six sections under dispute.

Prior to August 4, 1966, Mobil Oil Corporation (hereinafter referred to as "Mobil") owned oil and gas leases covering twenty-nine sections in the Rojo Caballos Field in Pecos County, Texas. The six sections comprising the subject matter of this suit were a part of those twenty-nine sections, and are identified as sections 23, 24, 25 and 26, Block 49, and sections 19 and 30, Block 48. From this point forward, we will refer to the sections by number only and eliminate any corresponding reference to the block number.

On August 4, 1966, Mobil and Westland entered into a farmout agreement (hereinafter referred to as the Mobil/Westland farmout agreement). The leases which were the subject matter of the farmout agreement covered, among others, sections 19, 23 and 24. The agreement provided that at such time as Westland complied with its drilling obligations and completed a producing well, it would be entitled to receive an assignment of one-half of Mobil's interest in those sections. The Mobil farmout obligated Westland to commence a wildcat well by September 1, 1966. Westland sought more time, and Mobil granted an extension of time to December 1, 1966, in a letter dated August 29, 1966.

A Midland partnership, Chambers & Kennedy (hereinafter referred to as "C & K"), became interested in taking over Westland's obligations under the Mobil/Westland farmout agreement. The agreement made to accomplish this was the November 15, 1966, letter agreement. This agreement contains a provision which is the center of the controversy in this case. Under the terms of this agreement, C & K assumed all of the obligations imposed by the Mobil/Westland farmout agreement, agreed to pay Westland $50,000.00 in cash, and assigned to Westland a 1/16 of 5/8 overriding royalty interest on any acreage earned from

Mobil, 1/32 of the working interest obtained from Mobil under the farmout agreement, and a production payment of $150,000.00 payable out of the production from the test well.

The November 15, 1966, letter agreement also contained what shall be referred to as an area of mutual interest agreement. This is the controversial provision referred to above. In an area of mutual interest agreement, the parties attempt to describe a geographic area within which they agree to share certain additional leases acquired by any of them in the future. This necessarily contemplates that oil and gas leasehold interests will be conveyed. Therefore, the agreement is in the nature of a contract to convey interests in oil and gas leases.

The area of mutual interest agreement was contained in paragraph 5 of the November 15, 1966, letter agreement and reads as follows:

5. If any of the parties hereto, their representatives or *assigns*, acquire any additional leasehold interests affecting any of the lands covered by said farmout agreement, or any additional interest from Mobil Oil Corporation under lands in the area of the farmout acreage, such shall be subject to the terms and provisions of this agreement; provided, however that in no event shall the owners of the working interest under any portion of such acreage be entitled to less than 75% working interest leases.

(emphasis added). It is this covenant or obligation which Westland seeks to enforce against Gulf and Superior.

C & K included several other investors in the farmout well, including Union Texas Petroleum, a division of Allied Chemical Corporation (hereinafter "Union Texas"). The farmout well was spudded on December 1, 1966, and completed on January 23, 1968. The well was marginal but earned the acreage. By assignment dated March 7, 1968, Mobil conveyed to C & K, Union Texas as operator, and the other investors in the well, one-half of its leasehold interests in the farmout block, which included the leases covering sections 19, 23 and 24. This

assignment provided that as to all the lands and depths assigned, with one exception, the assignment would be subject to all the provisions of a certain operating agreement dated March 1, 1968. The precise language of that assignment was as follows:

This Assignment is made without warranty of title, either express or implied. In addition, as to all the lands and depths herein assigned (except as to said Section 18), *this Assignment shall be subject to all the provisions of that certain Operating Agreement dated March 1, 1968,* by and between Assignor and Assignee.

The provisions hereof shall be binding upon, and shall inure to the benefit of, the parties hereto and their respective heirs, devisees, legal representatives successors and assigns.

(emphasis added). The March 7, 1968, assignment is the only instrument mentioned thus far which was recorded. It was filed for record May 16, 1968, in the lease records of Pecos County, Texas.

The March 1, 1968, operating agreement was executed by Mobil, C & K, Union Texas, and the other owners of the interests in the six sections of land described in the Mobil/Westland farmout agreement. This operating agreement is critical to an understanding of the case because of the provisions contained within paragraph 31, the last clause of the agreement. Captioned above paragraph 31 was the heading, "OTHER CONDITIONS, IF ANY, ARE:."

Subparagraphs B and C referred to the Mobil/Westland farmout agreement and the November 15, 1966, letter agreement as follows:

B. This Agreement shall supersede and replace that certain Operating Agreement attached as Exhibit "A" to the said Farmout Letter Agreement dated August 4, 1966 between Mobil Oil Corporation and Westland Oil Development Corporation. *In the event of any conflict between this Contract and the Farmout Letter Agreement dated August 4, 1966, between Mobil Oil Corporation and Westland Oil Development Corporation as amended by letter dated August 29, 1966,* *and November 11, 1966, and a Letter Agreement between Chambers and Kennedy and Westland Oil Development Corporation and L. C. Kung dated November 15, 1966, then such prior agreements shall prevail over this Agreement.*

(emphasis added).

The court of appeals quoted the last sentence of paragraph 31.B. but did not quote the next paragraph:

C. Exhibit "A" lists all of the parties, and their respective percentage or fractional interests under this Agreement. *Such interests are specifically subject to all terms, conditions and reservations set forth in that Farmout Agreement Letter dated August 4, 1966 between Mobil Oil Corporation and Westland Development Corporation, as amended, and that certain Assignment dated March 7, 1968 from Mobil Oil Corporation to C. Fred Chambers and W. D. Kennedy and Union Texas Petroleum.*

(emphasis added).

Gulf and Superior obtained their interests in the leases covering sections 19, 23 and 24 through dealings with one Bernard Hanson. By letter dated April 18, 1972, Mobil entered into a farmout agreement with Hanson wherein Mobil agreed that if Hanson commenced a test well on Section 25, Block 49, to a depth sufficient to test the Ellenberger formation and completed it as a producer, Mobil would assign all of its leasehold rights below a depth of 15,000 feet in section 25, and an undivided 60% of its leasehold rights in sections 19 and 30, Block 48, and Sections 23, 24 and 26, Block 49. Sections 19, 23 and 24 were the three southernmost sections involved in the Mobil/Westland farmout agreement. Sections 25, 26 and 30 abut those three sections to the south. The farmout agreement with Hanson stated that the lands and leases covering sections 19, 23 and 24 were covered by the March 1, 1968, operating agreement between Mobil, C & K and Union Texas, and that any interest earned by Hanson from Mobil would be subject to that agreement. Hanson then assigned this farmout agreement to Gulf and Superior.

Hanson also approached C & K, Union Texas and their other partners, and obtained from them farmouts similar to the one received from Mobil. These farmouts covered part of their interests in leases covering sections 19, 23 and 24 which were earned pursuant to the Mobil/Westland farmout agreement and the November 15, 1966, letter agreement. Most of these farmout agreements refer to the March 1, 1968, operating agreement. Hanson also assigned these farmout agreements to Gulf and Superior.

In 1972, Gulf and Superior drilled the test well as required by the Hanson farmout agreements. This well was completed in March 1973, as a large gas producer. Gulf and Superior thereby earned the acreage under these farmout agreements, and the earned leasehold estates were assigned directly to Gulf and Superior. The assignment from Mobil was dated May 22, 1973, and was expressly made subject to the March 1, 1968, operating agreement.

Upon learning of the last assignments from Mobil, Westland filed suit and sought a declaratory judgment that the November 15, 1966, letter agreement was valid and applied to the interests acquired by Gulf and Superior from Mobil, and would cover any acreage so acquired in the Rojo Caballos Field. Westland moved for summary judgment, their motion being based on the November 15, 1966, letter agreement, various instruments, letters between the parties which included those instruments previously referred to and several depositions. Westland contended that all of these supported their claim that Gulf and Superior were on notice of the November 15, 1966, letter agreement, and that, by references made therein to other existing instruments, their interests acquired under the letter agreement covered the interest acquired by Gulf and Superior from Mobil. The trial court granted Westland's motion for summary judgment and declared the November 15, 1966, letter agreement enforceable as to the interests and acreage acquired by Gulf and Superior from Mobil. The decree vested title in Westland in the manner set forth in the November 15, 1966, letter agreement.

Under rule 166–A of the rules of civil procedure, a plaintiff/movant must prove as a matter of law all of the issues expressly presented in order to be entitled to a summary judgment. Tex.R.Civ.P. 166–A (1978). The defendant/nonmovant "must expressly present to the trial court any reasons seeking to *avoid* movant's entitlement, such as those set out in rules 93 and 94, and he must present summary judgment proof when necessary to establish a fact issue." *City of Houston v. Clear Creek Basin Authority,* 589 S.W.2d 671 (Tex.1979). Thus, it was incumbent upon Gulf and Superior to plead and present summary judgment proof establishing a fact issue on the affirmative defense of statute of frauds. Gulf and Superior also opposed the motion for summary judgment on the basis that they were innocent purchasers for value and without notice of the equitable claim of Westland. However, Gulf and Superior were not required to prove their status of innocent purchasers. The plaintiff claiming an equitable title assumes the burden of proving that the subsequent purchaser of the legal title was not a bona fide purchaser. *Walters v. Pete,* 546 S.W.2d 871 (Tex. Civ.App.—Texarkana 1977, writ ref'd n.r. e.). Therefore, in the context of this case, Westland was required to prove as a matter of law that Gulf and Superior were on notice of its equitable claim to the leases in question.

There are two questions before us in this case. The first concerns the issue of whether Gulf and Superior were on notice of Westland's prior equitable title. The second issue deals with whether the description of the leases covered by the area of mutual interest agreement contained in paragraph 5 of the November 15, 1966, letter agreement is legally insufficient, thereby rendering the agreement unenforceable under the statute of frauds. We will first address the issue of notice.

The court of appeals held that a question of fact existed as to whether Gulf and Superior, as reasonable purchasers, would have been placed on the duty to conduct

complete inquiry of the operating agreement by the reference to it in their assignment from Mobil. The court believed that the normal function of an operating agreement was to define and control the development operations of a certain tract of land, and not to affect title to property. Thus, a question of fact existed as to what a reasonable purchaser would have done under the circumstances.

■ This, however, is not the rule with regard to references made in documents appearing in one's chain of title. It is well settled that "a purchaser is bound by *every* recital, reference and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims." (emphasis added). *Wessels v. Rio Bravo Oil Co.*, 250 S.W.2d 668 (Tex.Civ.App.—Eastland 1952, writ ref'd). *See also Williams v. Harris County Houston Ship Channel Navigation District*, 128 Tex. 411, 99 S.W.2d 276 (1936); *Texas Co. v. Dunlap*, 41 S.W.2d 42 (Tex. Comm'n App.1931, jdgmt adopted); *Guevara v. Guevara*, 280 S.W. 736 (Tex.Comm'n App.1926, jdgmt adopted); *Tuggle v. Cooke*, 277 S.W.2d 729 (Tex.Civ.App.—Fort Worth 1955 writ ref'd n.r.e.); *Abercrombie v. Bright*, 271 S.W.2d 734 (Tex.Civ.App.—Eastland 1954, writ ref'd n.r.e.); Lange, Land Titles and Title Examination § 816 at 259 (1961). As stated in *Loomis v. Cobb*, 159 S.W. 305 (Tex.Civ.App.—El Paso 1913, writ ref'd),

> The rationale of the rule is that *any* description, recital of fact, or reference to other documents puts the purchaser upon inquiry, and he is bound to follow up this inquiry, step by step, from one discovery to another and from one instrument to another, until the whole series of title deeds is exhausted and a complete knowledge of *all the matters referred* to and affecting the estate is obtained.

(emphasis added) 159 S.W. at 397; *see also W. T. Carter & Bro. v. Davis*, 88 S.W.2d 596 (Tex.Civ.App.—Beaumont 1935, writ dism'd).

■ Since it was the duty of Gulf and Superior to make investigation of the operating agreement, they are also charged with notice of the contents of the operating agreement. *Wessels v. Rio Bravo Oil Co., supra.* Subparagraph 31.B. makes a clear reference to the November 15, 1966, letter agreement and therefore Gulf and Superior were charged with the duty of inspecting that document. We also believe that subparagraph 31.C., when read in conjunction with 31.B., is capable of a construction which would supply a reference to the November 15, 1966, letter agreement. However, it is unnecessary for us to decide this question in light of the unambiguous reference made in subparagraph 31.B.

It is not unusual for an operating agreement, as was the case here, to not be placed of record. An entirely different result might obtain on the issue of notice if, upon diligent inquiry and search, Gulf and Superior were simply unable to obtain a copy of the operating agreement. *See Loomis v. Cobb, supra.* However, Gulf and Superior have never contended such was the case, and there is evidence to the effect that Gulf and Superior had a copy of the operating agreement in their files. Therefore, we hold that the reference to the March 1, 1968, operating agreement contained in the May 22, 1973, assignment from Mobil to Gulf and Superior, as a matter of law, charged Gulf and Superior with the duty of inspecting said agreement. As a result, Gulf and Superior were charged with notice of the November 15, 1966, letter agreement and the equitable claim of Westland, and cannot enjoy the status of innocent purchasers.

■ We next address the issue of whether paragraph 5 of the November 15, 1966, letter agreement supplies a legally sufficient description of the property covered thereby. It is an agreement to assign an interest in an oil and gas leasehold estate, and therefore is subject to the requirements of the statute of frauds as set out in section 26.01 of the Texas Business and Commerce Code. Tex.Bus. and Com.Code Ann. § 26.-01 (Supp.1980–1981); *Consolidated Gas & Equipment Co. v. Thompson*, 405 S.W.2d 333 (Tex.1966). The paragraph actually

contains two different descriptions which are separated by the word "or." To illustrate this, we will insert each description separately into the body of paragraph 5. Employing this method, the first description would read as follows:

If any of the parties hereto, their representatives or assigns, acquire *any additional leasehold interests affecting any of the lands covered by said farmout agreement,* ..., such shall be subject to the terms and provisions of this agreement,

(emphasis added). Westland contends this constitutes a sufficient description of sections 19, 23 and 24, thereby rendering the area of mutual interest agreement enforceable as to those sections.

The second description would provide:
If any of the parties hereto, their representatives or assigns, acquire ... any additional interest from Mobil Oil Corporation *under lands in the area of the farmout acreage,* such shall be subject to the terms and provisions of this agreement; ...

(emphasis added). Westland contends this second description applies to sections 25, 26 and 30, and is legally sufficient to permit enforcement of the area of mutual interest agreement as to those three sections.

We believe the first description is legally sufficient to satisfy the statute of frauds. The operative words are "leasehold interests affecting any of the lands covered by said farmout." In the introductory paragraph to the November 15, 1966, letter agreement, the parties expressly agreed that the Mobil/Westland farmout would be referred to as "said farmout." Copies of that instrument were attached to the November 15, 1966, letter agreement. The caption to the Mobil/Westland farmout agreement reads as follows:

PROPOSED FARMOUT OF MOBIL'S LEASEHOLD INTEREST IN THE DRILLSITE SECTION AND AN UNDIVIDED ONE–HALF OF OUR LEASEHOLD INTEREST IN SECTIONS 7, 18 and 19, BLOCK 48, TWP. 8, T. & P., AND SECTIONS 13, 23 and 24, BLOCK 49, TWP. 8, T. & P. LESS THE DRILLSITE SECTION FOR THE DRILLING OF A PROJECTED ELLENBURGER TEST TO BE LOCATED IN THE SE ¼ SECTION 13, BLOCK 49, TWP. 8, T. & P. RY. CO. SURVEY, PECOS COUNTY, TEXAS (MOC T–29063, T–29165, T–30931–C, T–31229–C, D, AND T–31230–D, E, G–O).

In *Wilson v. Fisher,* 144 Tex. 53, 188 S.W.2d 150 (1945) this court stated:

In so far as the description of the property is concerned the writing must furnish within itself, *or by reference to some other existing writing,* the means or data by which the particular land to be conveyed may be identified with reasonable certainty.

(citation omitted) (emphasis added). *See also Kmiec v. Reagan,* 556 S.W.2d 567 (Tex. 1977); *Morrow v. Shotwell,* 477 S.W.2d 538 (Tex.1972); *Owen v. Hendricks,* 433 S.W.2d 164 (Tex.1968); *Pickett v. Bishop,* 148 Tex. 207, 223 S.W.2d 222 (1949). This has been referred to as the "nucleus of description" theory. *Gates v. Asher,* 154 Tex. 538, 280 S.W.2d 247 (1945).

We believe that the words "said farmout" sufficiently provide that nucleus of description. The introductory paragraph defines "said farmout" and one is expressly directed to an instrument which contains an adequate legal description. Therefore, the area of mutual interest agreement provides a description of sections 19, 23 and 24 which is legally sufficient.

We reach a different conclusion with respect to the second description. The phrase "lands in the area of the farmout acreage" does not meet the test set out above. Westland contends that one should substitute "Rojo Caballos Area" for the word "area" contained in the phrase recited above. Westland then argues that parol evidence could be introduced to supply a legal description for "Rojo Caballos Area."

■ Westland's argument asks us to indulge in an impermissible inference. The description necessary to meet the requirements of the statute of frauds cannot be arrived at from tenuous inferences and pre-

sumptions of doubtful validity. *Rowson v. Rowson,* 154 Tex. 216, 275 S.W.2d 468 (1955); *Wilson v. Fisher, supra.* When resort to extrinsic evidence is proper, it should be used only for the purpose of identifying the land with reasonable certainty from the data in the memorandum, and not for the purpose of supplying its location or description. *Id.* There is nothing contained within the November 15, 1966, letter agreement which necessarily leads to the conclusion that "area" means "Rojo Caballos Area." We believe that "lands in the area of the farmout acreage" simply means lands in close proximity to the farmout acreage. Such a description, under the established authority, is not legally sufficient. We hold the second description contained within paragraph 5 of the November 15, 1966, letter agreement is within the statute of frauds and unenforceable. Accordingly, the area of mutual interest agreement cannot be enforced with respect to sections 25, 26 and 30.

■ Gulf and Superior contend that if one part of the paragraph 5 description does not satisfy the statute of frauds, then this court's decision in *Phillips v. Burns,* 151 Tex. 614, 252 S.W.2d 927 (1952) prohibits enforcement of the contract as to the balance of the description. In *Phillips,* the court was faced with an entirely different situation. The description in that case read,

> One certain farm located about 6 miles south of Linden, Texas, in Cass County, a part of the A. D. Duncan Survey, and known as the old Whipple Place, together with several tracts of land adjoining it; amounting in all to about 500 acres, now owned by the lessor herein.

252 S.W.2d at 928. Thus, the contract of the parties was for 500 acres. This tract was comprised of the old Whipple Place *and* the tracts adjoining it. The court concluded that the "old Whipple Place" was a sufficient description, but the phrase, "together with several tracts of land adjoining it," was not. To hold part of the description valid and to disregard the rest, the court determined, would be writing a new contract for the parties. Implicit in the holding was that the parties never intended that the two descriptions could be enforced in the alternative. *Both* descriptions were necessary in order to obtain the 500 acres desired, and their agreement contemplated performance of the contract as to the entire acreage.

The import of paragraph 5 is not the same. The two descriptions are separated by the word "or" and it is highly probable that additional interests would be acquired in one of the areas, but not the other. In such case the assignee would be obligated to convey to Westland its proportionate interests only in the area in which the assignee acquired the additional interests. The result is that the contract would be performed as to one area, but not to the other. As such, the covenant to convey is divisible and capable of being enforceable in part and invalid in part. *See Kmiec v. Reagan,* 556 S.W.2d at 569.

The assignment from Mobil to Gulf and Superior covered sections 19, 23, 24, 25, 26 and 30. Only sections 19, 23 and 24 were "lands covered by" the Mobil/Westland farmout agreement. Therefore, the area of mutual interest agreement contained in paragraph 5 is enforceable only as to the additional leasehold interests acquired by Gulf and Superior covering those three sections.

Gulf and Superior also contend that the area of mutual interest agreement is a personal covenant between Westland and C & K, and therefore not binding upon them as assignees of C & K. They argue that privity of estate does not exist, and the covenant does not "touch and concern" the land. We disagree. The agreement contained within paragraph 5 of the November 15, 1966, letter agreement is a contract to convey interests in oil and gas leases. Such an agreement, at least with respect to sections 19, 23 and 24, involved covenants running with the land.

■ In order for the covenant to run with the land there must be privity of estate between the parties to the agreement. This means there must be a mutual or

successive relationship to the same rights of property. *Blasser v. Cass*, 158 Tex. 560, 314 S.W.2d 807 (1958). Privity of estate exists in this case by virtue of the assignment of sections 19, 23 and 24 to Gulf and Superior.

We further believe that the agreement touches and concerns the land. The tests involved in making this determination are far from absolute. The courts have consistently relied upon rather general statements in their analyses of the touch and concern requirement. As stated in Reno, *Covenants, Rents and Public Rights*, 2 Amer.L. of Prop. § 9.4 (1952):

> One of the two often cited statements of the requirement is that a covenant will run 'if it affected the nature, quality or value of the thing demised, independently of collateral circumstances, or if it affected the mode of enjoying it' . . .

It has also been said,

> If the promisor's legal relations in respect to the land in question are lessened—his legal interest as owner rendered less valuable by the promise—the burden of the covenant touches or concerns that land; if the promisee's legal relations in respect to that land are increased—his legal interest as owner rendered more value by the promise—the benefit of the covenant touches or concerns the land.

Bigelow, *The Content of Covenants in Leases*, 12 Mich.L.Rev. 639 (1914); Williams, *Restrictions on the Use of Land: Covenants Running with the Land at Law*, 27 Tex.L. Rev. 419 (1949).

We believe that the promise to convey the prescribed interests in the leases covering sections 19, 23 and 24 clearly affected the nature and value of the estate conveyed to C & K. It burdened the promisor's estate and could be considered to have rendered it less valuable. Accordingly, we are of the opinion that the covenant affecting Gulf and Superior's interest in sections 19, 23 and 24 was one which runs with the land.

The judgment of the court of appeals is reversed. We render judgment that Gulf and Superior were on notice of the equitable claim of Westland, and that the November 15, 1966, letter agreement is enforceable as to Section 19, Block 48, and Sections 23 and 24, Block 49, and unenforceable as to Sections 25 and 26, Block 49, and Section 30, Block 48.

Dissenting opinion by WALLACE, J., in which SPEARS, J., joins.

WALLACE, Justice, dissenting.

I respectfully dissent. While I agree with the Court's holding that the description contained in Paragraph 5 of the November 15 Letter Agreement is sufficient to satisfy the Statute of Frauds as to sections 19, 23, and 24, I do not agree with the holding that Gulf and Superior were on notice, as a matter of law, of the equitable claim of Westland.

Notice, in law, is of two kinds, actual and constructive. Courts in the past have confused the distinct meaning of the two types of notice by using these terms "constructive" and "actual" notice interchangeably. Many courts have not even distinguished between the two terms, but have merely stated a party was on notice. However, there are distinctions between types of notice which should be recognized and followed.

Constructive notice is implied by law, from duly recorded instruments or from the possession of land. *Sickles v. White*, 66 Tex. 178, 17 S.W. 543 (1886). The letter agreement before us was not recorded, therefore, we are not dealing with constructive notice.

Actual notice can be of two kinds, express and implied. *Hexter v. Pratt*, 10 S.W.2d 692 (Tex.Comm.App.1928). As this Court and other courts have previously stated, actual notice is a question of fact. *O'Ferral v. Coolidge*, 149 Tex. 61, 228 S.W.2d 146 (1950); *Flack v. First National Bank of Dalhart*, 148 Tex. 495, 226 S.W.2d 628 (1950); *Nelson v. Bridge*, 39 Tex.Civ.App. 283, 87 S.W. 885 (1905, writ ref'd); *Buckalew v. Butcher-Arthur Inc.*, 214 S.W.2d 184 (Tex.Civ.App.—Beaumont 1948, writ ref'd n.r.e.); *Portman v. Earnhart*, 343 S.W.2d 294 (Tex.Civ.App.—Dallas 1960, writ ref'd n.r.e.); *Exxon v. Raetzer*, 553 S.W.2d 842 (Tex.Civ.App.—Corpus Christi 1976, writ

ref'd n.r.e.); 58 Am.Jur.2d, Notice, § 5 (1971).

Express actual notice is express knowledge of a fact. *Woodward v. Ortiz*, 150 Tex. 75, 237 S.W.2d 286 (1951). Both parties admit that Gulf and Superior had no actual knowledge of the area of mutual interest clause; therefore, we are left with implied actual notice, if there is any notice at all.

Implied actual notice is an inference of fact. *Exxon v. Raetzer*, supra. This Court in *Flack*, supra, 226 S.W.2d at 632, stated the rule to be "one who has knowledge of such facts as would cause a prudent man to make further inquiry, is chargeable with notice of the facts, which by use of ordinary intelligence, he would have ascertained."

It is helpful to begin with the assignment through which Gulf and Superior gained title and work backward to see exactly what Gulf and Superior knew or should have known. To begin with, Gulf and Superior received an assignment dated May 22, 1973, from Mobil Oil of 60% of its interest in sections 19, 23, 24, 26 & 31, and 100% of its interest in section 25. This assignment was expressly made subject to the March 1, 1968 operating agreement. Gulf and Superior received this assignment by drilling a well on section 25 and earning the acreage pursuant to farmout agreements from Mobil, Chambers/Kennedy (C&K), and others. The operating agreement contains two possible references to the November 15 Letter Agreement. Paragraph 31B states:

> ... (i)n the event of any conflict between this contract and the Farmout Letter Agreement dated August 4, 1966, between Mobil Oil Corporation and Westland Oil Development, as amended by Letter dated August 29, 1966 and November 11, 1966 and a Letter Agreement between Chambers & Kennedy and Westland Oil Development Corporation and L. C. Kung dated November 15, 1966, then such prior agreements shall prevail over this Agreement.

Paragraph 31C states the following:

> Exhibit A lists all of the parties, and their ... interests .... Such interests

are specifically subject to all terms, conditions, and reservations set forth in that Farmout Agreement Letter dated August 4, 1966 between Mobil Oil Corporation and Westland Development Corporation as amended and that certain assignment dated March 7, 1968 from Mobil to C. Fred Chambers and W. D. Kennedy and Union Texas Petroleum.

It is the letter agreement dated November 15, 1966 between Westland/Kung and Chambers/Kennedy which contains the area of mutual interest clause which Westland contends Gulf and Superior are on notice of and therefore bound by.

This Court in *Flack,* supra, 226 S.W.2d at 631, stated that the duty of inquiry extends only to matters which are fairly suggested by the facts really known. In *Texas Co. v. Dunlap*, 41 S.W.2d 42 (Tex.Comm'n App. 1931, judgment adopted); *Guevara v. Guevara*, 280 S.W. 736 (Tex.Comm'n App.1926, judgment adopted); *Tuggle v. Cooke*, 277 S.W.2d 729 (Tex.Civ.App.—Fort Worth 1955, writ ref'd n.r.e.); and *W. T. Carter & Bro. v. Davis*, 88 S.W.2d 596 (Tex.Civ. App.—Beaumont 1935, writ dism'd); cited by the majority, the references were to vendor's liens and prior deeds. A deed and a vendor's lien definitely suggest matters involving title. An operating agreement and a "conflict between an operating agreement and a letter agreement" do not necessarily suggest a title matter. As pointed out by the Court of Appeals, the function of an operating agreement is to explain in detail the operation between the various interests in the development of a tract for economical production of the minerals, not to establish interests of any kind. Therefore, a reference to any conflict with an operating agreement might well have alerted a reasonably diligent purchaser to check the letter agreement if he was concerned with the operations, not for title reasons. Nor does paragraph 31B in any way suggest that the letter agreement between C&K and Westland involves title. The reference in 31C does not even refer to the November 15,

Letter Agreement between Westland and C&K, unless one assumes the words "as amended," refers to it. However, "as amended," just as logically refers only to the actual amendments to the farmout between Mobil and Westland of August 29, 1966, and November 11, 1966. The letter agreement between Westland and C&K is not an amendment to the agreement between Mobil and Westland, but a new agreement between different parties.

Additionally, where circumstances claimed to be sufficient to charge a person with notice may just as reasonably be referred to some other matter, such circumstances have been held not sufficient to charge him with notice. *Houston Oil Co. of Texas v. Griggs*, 181 S.W. 833, 838 (Tex.Civ. App.—Beaumont 1916) affirmed in 213 S.W. 261 (Tex.Comm.App.1919, judgment adopted); *Exxon Corp. v. Raetzer,* supra. We do not have to decide that question, since this case is before us on summary judgment. Ordinarly, summary judgment will not be awarded where the issue is inherently one for a jury, such as the exercise of judgment. 4 McDonald, Texas Civil Practice, "Judgments" Sec. 17.2612 at 177 (rev. 1971). Actual notice is normally a question of fact, it will only become a question of law when there is no room for ordinary minds to differ as to the proper conclusion to be drawn from the evidence. *O'Ferral v. Coolidge,* supra.

I am not willing to hold that as a matter of law, Gulf and Superior were on notice of an equitable right expressed in an unrecorded farmout agreement between Westland/Kung and Chambers/Kennedy, ambiguously referred to in an operating agreement between Chambers/Kennedy and Union Texas Petroleum, which was expressly referred to in the assignment from Mobil to Gulf and Superior. That is a question of fact, raised by the summary judgment proof and properly reserved for the trier of fact.

The majority opinion fails to mention the rules regarding actual notice. It instead states that the rule concerning references made in documents appearing in one's chain of title, is that a purchaser is bound by every recital, reference, and reservation contained in or fairly disclosed by any instrument which forms an essential link in the chain of title under which he claims. Therefore, the majority concludes that Gulf and Superior were on notice as a matter of law of the contents of the operating agreement, and on notice as a matter of law of the contents of the November 15 letter agreement. Even if the rule recited by the majority were the only applicable rule, I would still not conclude that Gulf and Superior were on notice, as a matter of law, of the contents of the November 15 letter agreement.

I would agree that under the rule and the cases cited by the majority, Gulf and Superior would be on notice of the contents of the March 1, 1968 operating agreement. The May 22, 1973 assignment from Mobil to Gulf and Superior is within Gulf and Superior's chain of title, and it expressly refers to the operating agreement. Therefore, it falls directly within the rule cited by the majority. However, the March 1, 1968 operating agreement does not contain the clause under which Westland asserts its equitable rights. Nor is there any clause in the operating agreement which sets out Westland's rights. Nor is the operating agreement within Gulf and Superior's chain of title. Therefore, the rule cited by the majority does not apply to a reference to another instrument contained in the operating agreement.

It is this extra step from the March 1, 1968 operating agreement to the November 15 letter agreement which I do not believe the case authority supports. While much of the language contained in the cases cited by the majority is broad enough to cover the step from the operating agreement to the letter agreement, I do not think the facts of those cases would allow such an extension of the rule.

In every case cited by the majority, the instrument which contains the equitable right is referred to in an instrument in the purchaser's chain of title. Furthermore, the instrument referred to somehow direct-

**914**

ly suggests outstanding rights, such as deeds and vendor's liens, namely: *Wessels v. Rio Bravo Oil Co.*, 250 S.W.2d 668 (Tex. Civ.App.—Eastland 1952, writ ref'd)—deed within purchaser's chain of title referred to an unrecorded prior contract and further stated, "excepting and reserving herefrom all the exceptions and reservations contained in the said instrument so made by the said Railway Company"; *Williams v. Harris County Houston Navigation District,* 128 Tex. 411, 99 S.W.2d 276 (1936)—purchaser's deed referred directly to another deed which was within its chain of title, that deed contained covenants regarding the execution of releases which the court held the purchaser was bound by; *Texas Co. v. Dunlap,* supra, deed within the purchaser's chain of title reserved a vendor's lien, and purchaser was charged with notice that a lien existed against said land; *Guevara v. Guevara,* supra,—purchaser's deed recited the existence of a purchase money note and retention of a vendor's lien; the court imputed knowledge of the contents of that note to the purchaser; *Tuggle v. Cooke,* supra,—reference in deed in purchaser's chain of title to an interest in 50 acres being conveyed or had been conveyed by another deed, purchaser was bound by that conveyance; *Abercrombie v. Bright,* 271 S.W.2d 734 (Tex.Civ.App.—Eastland 1954, writ ref'd n.r.e.)—reference in deeds in purchaser's chain of title stated that they were subject to a former conveyance of 11 acres; *Loomis v. Cobb,* 159 S.W. 305 (Tex. Civ.App.—El Paso 1913, writ ref'd)—original deed from the town of San Elizario to the original grantee, which was in the purchaser's chain of title, recited that it was executed by virtue of authority and in accordance with an ordinance of the town council. The deed also stated that the ordinance was for surveying, adjusting, and providing for the division and granting of the unappropriated lands. Purchaser was held to be bound by the provisions of the ordinance; *W. T. Carter & Bro. v. Davis,* supra,—recorded deed referred to another recorded deed, both deeds were links in Carter & Bro.'s chain of title, therefore the reservation of the mineral estate in the first

deed was notice to Carter & Bro. that it was only acquiring the surface estate.

I would not extend the rule cited in these cases, to the facts of this case. I would hold that a question of fact remains for the trier of fact to decide and, therefore, would remand the cause to the trial court on the issue of notice.

SPEARS, J., joins in this dissent.