# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

February 15, 2018

Lyle W. Cayce
Clerk

No. 17-10040

FORT WORTH 4TH STREET PARTNERS, L.P.; KSM MINERALS, L.L.C.; MOJITO ENERGY, L.L.C.; 4TH STREET MINERALS, L.L.C.; REILLY FAMILY MINERALS, L.L.C.,

      Plaintiffs - Appellants

v.

CHESAPEAKE ENERGY CORPORATION; CHESAPEAKE OPERATING, L.L.C.; CHESAPEAKE EXPLORATION, L.L.C., as Successor by Merger to Chesapeake Exploration, L.P.; CHESAPEAKE LAND COMPANY, L.L.C.; CHESAPEAKE EXPLORATION, L.P.,

      Defendants - Appellees

Appeal from the United States District Court
for the Northern District of Texas

Before DENNIS, CLEMENT, and GRAVES, Circuit Judges.

JAMES L. DENNIS, Circuit Judge:

Fort Worth 4th Street Partners, L.P. (FWP) and its designees brought suit against Chesapeake Exploration, L.L.C. (Chesapeake) and related entities to recover payment allegedly due under a provision of a Surface Use Agreement governing Chesapeake's use of FWP's land. Before this payment came due, FWP sold the surface of this land to Chesapeake Land Company, L.L.C. The district court determined that the payment provision was a covenant that ran with the surface of the land and that FWP accordingly forfeited the benefit of

No. 17-10040

this covenant when it sold that land.  We AFFIRM the judgment of the district court.

## I

In 2005, FWP leased mineral rights in a plot of its land ("FWP Lands") to Dale Resources, L.L.C., Chesapeake's predecessor in interest. Contemporaneously, the parties entered into a Surface Use Agreement (SUA) governing Dale's use of the surface of the FWP Lands while conducting oil and gas operations.  Paragraph 17 of the SUA included a payment provision that stated:

> On or before the expiration of six (6) years from the date of this Surface Use Agreement (the "Damage Payment Date"), the Working Interest Owner shall pay to the Surface Owner a sum equal to Six Dollars ($6.00) per square foot (the "Base Price") for each square foot included in an Operation Site, the Central Facility, the Water Supply Pit and all roads and pipeline easements appurtenant to any of the same (collectively the "Occupied Lands"); provided, however, if, before the Damage Payment Date, Working Interest Owner has drilled and completed at least eight (8) wells on and from an Operation Site, then the "Base Price" shall be reduced from Six Dollars and No/100 ($6.00) per foot to Three Dollars and No/100 ($3.00) per foot.

In the subsequent and final section, the SUA additionally established that: "[t]he terms, provisions and conditions hereof shall be covenants running with land and shall be binding upon and inure to the benefit of the Working Interest Owner, the Surface Owner, and each of their respective successors, legal representatives, heirs, assigns, lessees, and sublessees."

Subsequently, Chesapeake succeeded to Dale's interest in the mineral lease and the SUA.  Then, in 2007, before the "Damage Payment Date," established in Paragraph 17, FWP sold the entirety of the surface of the FWP Lands to Chesapeake Land Company L.L.C., a related entity, for

approximately $34 million.   In the real estate agreement, FWP expressly reserved its mineral rights, but otherwise conveyed the surface "together with all improvements and fixtures thereon and all rights, privileges, easements, benefits and agreements appurtenant thereto."   In connection with the sale of the FWP Lands, FWP and Chesapeake entered into a Master Amendment to amend the lease and SUA to accord with Chesapeake's ownership of the surface rights.   Among other amendments, the Master Amendment made the following change to the SUA:

> Elimination of Surface Use Restrictions. . . .  FWP shall no longer be entitled to restrict or limit where or how operations for drilling, operation and producing oil, gas or other minerals under the Lease are conducted.  Therefore, any provision of the Surface Agreement which purports to limit or restrict the "Working Interest Owner's" right to enter upon or use any surface of the FWP Lands are hereby deleted and terminated, including, but not limited to Paragraphs 1 through 13.

The Master Amendment also reiterated: "The terms, provisions, covenants, and conditions" of the SUA "are intended to be, and shall be deemed to be covenants running with the FWP Lands."   Finally, this document included a "Non-Merger Clause" that stated: "The parties hereto acknowledge and agree that the terms and provisions of the Lease, the [SUA], and the Joint Operating Agreement, as amended, shall remain in full force and effect."

In 2014, three years after the "Damage Payment Date" in Paragraph 17, FWP brought the instant lawsuit against Chesapeake and related entities asserting multiple breach-of-contract claims.   The parties settled all claims except FWP's claim for payment of $2,503,346.85 under Paragraph 17, on which the parties filed cross-motions for summary judgment.  The district court granted summary judgment to Chesapeake, holding that Paragraph 17 created a covenant that ran with the land and, alternatively, that the Master

No. 17-10040

Amendment's deletion of terms essential to calculate the amount of payment rendered the provision indefinite and thus unenforceable.

## II

We review a district court's grant of summary judgment de novo. *Johnson v. World All. Fin. Corp.*, 830 F.3d 192, 195 (5th Cir. 2016). The determination that a contract is unambiguous and the interpretation of that contract are legal questions also reviewed de novo. *Clardy Mfg. Co. v. Marine Midland Bus. Loans Inc.*, 88 F.3d 347, 352 (5th Cir. 1996). The parties agree that Texas contract and property law govern FWP's claim. *See, e.g.*, *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) ("[F]ederal courts sitting in diversity apply state substantive law and federal procedural law.").

In Texas, a covenant runs with the land when four requirements are met: (1) it touches and concerns the land; (2) it relates to a thing in existence or specifically binds the parties and their assigns; (3) it is intended by the original parties to run with the land; and (4) the successor to the burden has notice. *In re Energytec, Inc.*, 739 F.3d 215, 221 (5th Cir. 2013) (citing *Inwood N. Homeowners' Ass'n, Inc. v. Harris*, 736 S.W.2d 632, 635 (Tex. 1987)). Otherwise, the agreement is a personal covenant that remains with the original parties to the contract and does not run to successors. *In re El Paso Refinery, LP*, 302 F.3d 343, 356–57 (5th Cir. 2002). FWP argues that Paragraph 17 does not satisfy the first and third elements, touch and concern and parties' intent. Instead, according to FWP, Paragraph 17 is a "beneficial personal covenant" that obligated the "Working Interest Owner" to make a deferred payment to FWP at the predetermined date as additional consideration for the contemporaneous gas and oil lease.

As a preliminary matter, FWP contends that the benefit of a covenant does not necessarily run with the land even if the burden does. FWP explicitly

4

concedes that the burden of Paragraph 17 runs with the land, but argues that the district court erred by not analyzing the burden and the benefit separately. Assuming without deciding that the burden of a covenant can run with the land while the benefit does not under Texas law, we nevertheless conclude that the benefit of this covenant runs with the land to the current owner of the surface.

## A

The tests governing when a covenant touches and concerns land under Texas law "are far from absolute." *Westland Oil Dev. Corp. v. Gulf Oil Corp.*, 637 S.W.2d 903, 911 (Tex. 1982). Some Texas courts have said that the benefit of a covenant runs with the land when it "affected the nature, quality or value of the thing demised, independently of collateral circumstances, or if it affected the mode of enjoying it." *Id.* (cleaned up); *see El Paso*, 302 F.3d at 356. Other courts have stated that "if the promisee's legal relations in respect to that land are increased—his legal interest as owner rendered more value by the promise—the benefit of the covenant touches or concerns the land." *Westland*, 637 S.W.2d at 911 (cleaned up); *see Mobil Oil Corp. v. Brennan*, 385 F.2d 951, 953 (5th Cir. 1967).

Under either of these tests, the benefit of Paragraph 17 touches and concerns the land because it affects the value of the surface of the FWP Lands and specifically renders its owner's legal interest in the land more valuable. FWP fails to acknowledge that the benefit of Paragraph 17 is not merely the right to receive payment but also how the method of calculating this payment preserves the land's value to its owner. By basing the payment due on the square footage occupied by the lessee, the terms of the provision operate to incentivize the lessee to use, and consequently, damage, as little of the surface land as possible. Critically, structuring the payment in this way does not

No. 17-10040

merely compensate FWP for any such damage; it impacts how the lessee will use the land, thereby preserving its value to its owner.  By incentivizing the lessee to disturb as little of the FWP Lands as possible with its extraction operations, Paragraph 17 ensures that one's "legal interest as owner [is] rendered more value by the promise."  *Westland*, 637 S.W.2d at 911. Accordingly, the benefit of Paragraph 17 touches and concerns the FWP Lands.

**B**

To create a real covenant, the contracting parties must also intend at the time of the agreement that the covenant run with the land.  *Inwood*, 736 S.W.2d at 635.  Courts judge intent by first looking to the text of the instrument itself to determine if there is language expressly stating that the covenant binds successors.  *See Billington v. Riffe*, 492 S.W.2d 343, 346 (1973).  Texas's parol evidence rule "precludes consideration of extrinsic evidence to contradict, vary or add to the terms of an unambiguous written agreement absent fraud, accident or mistake."  *In re H.E. Butt Grocery Co.*, 17 S.W.3d 360, 369 (Tex. App. 2000) (citations omitted); *see* TEX. BUS. & COMMERCIAL CODE ANN. § 2.202.  "If a written contract is worded in a manner that allows it to be given a certain or definite legal meaning or interpretation, then the contract is not ambiguous. . . . [P]arol evidence is not admissible to render a contract ambiguous, which on its face, is capable of being given a definite certain legal meaning."  *EOG Res., Inc. v. Killam Oil Co.*, 239 S.W.3d 293, 298 (Tex. App. 2007) (citations omitted).

Here, the SUA unambiguously declares that: "[t]he terms, provisions and conditions hereof shall be covenants running with land and shall be binding upon and inure to the benefit of the Working Interest Owner, the Surface Owner, and each of their respective successors."  No portion of the SUA purports to exempt the right to payment in Paragraph 17, which immediately

6

precedes this language, from this characterization. As the district court noted, the Master Amendment also reiterated that "[t]he terms, provisions, covenants, and conditions" of the SUA "are intended to be, and shall be deemed to be covenants running with the FWP Lands." This express, unambiguous language sufficiently "evidences the intent of the original parties that the covenant run with the land." *Inwood*, 736 S.W.2d at 633, 635.

FWP contends that this court should consider an affidavit from a beneficial owner of FWP that supports FWP's assertions that Paragraph 17 was intended as a "beneficial personal covenant," not a covenant running with the land. To the extent FWP contends that this affidavit contradicts unambiguous intent finally expressed in both the SUA and the Master Amendment that Paragraph 17 was a covenant running with the land, it is inadmissible parol evidence and we will not consider it. The district court correctly concluded that the parties intended Paragraph 17 to be a real covenant running with the land.

**\*\*\***

For these reasons, we affirm the district court's conclusion that the disputed payment provision constituted a covenant running with the land. Because FWP consequently forfeited its right to payment under this paragraph when it sold the surface of the land at issue to Chesapeake, we do not address the district court's alternative holding that the Master Amendment rendered the provision unenforceable for vagueness.

AFFIRMED.