# IN THE COURT OF APPEALS OF OHIO

## SEVENTH APPELLATE DISTRICT
## BELMONT COUNTY

### HILLS AND HOLLERS, LLC,

Plaintiff-Appellant,

v.

### OHIO GATHERING COMPANY, LLC,

Defendant-Appellee.

---

**OPINION AND JUDGMENT ENTRY**
**Case No. 17 BE 0040**

---

Civil Appeal from the
Court of Common Pleas of Belmont County, Ohio
Case No. 16 CV 410

**BEFORE:**
Carol Ann Robb, Gene Donofrio, Cheryl L. Waite, Judges.

---

**JUDGMENT:**
Affirmed.

---

*Atty. Jerome W. Cook*, *Atty. Michael J. Meyer*, Benesch, Friedlander, Coplan & Aronoff LLP 200 Public Square, Suite 2300, Cleveland, Ohio 44114 for Plaintiff-Appellant and

*Atty. Kevin L. Colosimo*, *Atty. Christopher W. Rogers*, *Atty. Daniel P. Craig*, Frost Brown Todd LLC, Union Trust Building, 501 Grant Street, Suite 800 Pittsburgh, Pennsylvania, 15219, for Defendant Appellee.

Dated: July 2, 2018

**Robb, P.J.**

**{¶1}** Plaintiff-Appellant Hills and Hollers, LLC appeals the decision of the Belmont County Common Pleas Court granting summary judgment in favor of Defendant-Appellee Ohio Gathering Company, LLC. Appellant argues it is entitled to enforce a clause in the addendum to the pipeline right of way agreement which said Appellee "shall be responsible for all other taxes, charges, and market enhancements charged to the flow of gas or liquids from the [named] well pad." Appellant believes the court applied the merger by deed doctrine and contends an exception to the doctrine applies; specifically, Appellant asserts the clause was independent and collateral to the right of way agreement. Appellant concludes the conveyance to Gulfport did not extinguish its right to enforce the clause as Appellant reserved the mineral rights. If this argument succeeds, Appellant contests the trial court's alternative holding and asserts Appellee's subsequent release of the right of way cannot eliminate its obligations to Appellant under the disputed clause. As we conclude Appellant's conveyance of the property eliminated its right to enforce the disputed clause in the right of way agreement, we need not reach the alternative argument on the release. The trial court's judgment is hereby affirmed.

## STATEMENT OF THE CASE

**{¶2}** The sole member of Appellant Hills and Hollers, LLC is Scott Stronz. He entered into a lease with Gulfport Energy Corporation in 2011 over a 78.54 tract (and a smaller tract). He conveyed the property to Appellant in 2014. Five wells drawing from a pooled unit were located at the Stronz well pad which was on Appellant's property. Appellee Ohio Gathering Company, LLC was a midstream company who gathered gas (and liquids) from the wells, compressed it, and transported it to processing facilities.[1]

---

[1] The amended complaint (at ¶ 31 and 93) stated Appellee "provided the post-production gathering, compression, treating, processing, fractionation, transport, and marketing relative to the natural gas and liquids flowing from" the Stronz well pad. Appellee's answer admitted it provided midstream services to Gulfport relative to the wells at the Stronz well pad but denied Appellant's description of those services. At deposition, Appellee's representative testified they performed gathering and transportation, which may include compression and dehydration. It was unclear what further services were rendered and by whom (e.g., there were references to "Markwest and/or Ohio Gathering").

Fees for the service were charged to the producer-lessee (Gulfport) who decreased the royalty to the lessor (Appellant) as a result.

{¶3}   On March 27, 2015, Appellant executed a right of way agreement granting Appellee a pipeline right of way and an easement over the 78.54 acre tract.   The recorded right of way agreement provided the grantee with the right "at any time to abandon and terminate all or any part of the right-of-way and easement rights granted herein, by filing a release of a same in the county records."   The grant was binding on the grantor and grantee and "shall inure to the benefit of their respective heirs, executors, personal representatives, successors and assigns."   The grantor agreed all consideration due for the right of way and easement had been received, except to the extent any consideration was due upon completion of construction.   The agreement said the grantor's failure to comply with any covenant shall not be construed as a breach until the grantee gives written notice and the grantor fails to cure within 30 days.

{¶4}   The recorded right of way agreement also said the grantee can elect to record the agreement or a memorandum of the agreement.   The recorded right of way contained an integration clause (providing no other statements can add to or change the terms of the agreement, which was the entire agreement) and concluded by stating: "This Right of Way Agreement is made further subject to the terms and provisions contained in that certain unrecorded Addendum by and between GRANTOR and GRANTEE herein, executed of even date herewith."

{¶5}   This incorporated addendum to the recorded right of way agreement was executed at the same time and specifically reiterated it "is made a part of" the right of way agreement.   The heading directed it was not to be recorded.   The addendum provided for payments of $36,000 for the grant of the right of way and $144,000 as damages for the construction and installation of the initial pipeline (with an estimated total footage of 2,400 feet).   The location was defined by two attached exhibits.   An additional payment of $180,000 was required before construction of a second pipeline.

{¶6}   A numbered list of "Special Conditions" in the addendum   obligated Appellee to pay $20,000 for a temporary work area and $20,000 for use of an access road; set forth obligations concerning ditches, markers, clearing, grading, reseeding, cleaning, and installing through crops; and prohibited fishing, hunting, and most above-ground appurtenances.   Among the special conditions was the following clause:

Case No. 17 BE 0040

13. <u>Real Estate Taxes and Other Expenses</u>. Owner shall be responsible for the payment of all real estate taxes assessed against Owner's Property. If the applicable taxing authorities increase the taxable value of improvements upon the real estate as a result of the installation of the Pipelines, Grantee agrees to reimburse Owner for the amount of such increase directly attributable to the Pipelines and/or the Easements. **Grantee shall be responsible for all other taxes, charges and market enhancements charged to the flow of gas or liquids from the Scott well pad or Stronz well pad.**"

(Emphasis added) (hereinafter: the "charges to the flow of gas" clause).

**{¶7}** Pursuant to the terms of the agreement, Appellee paid $220,000 to Appellant for the initial pipeline (the sum of $144,000, $36,000, $20,000, and $20,000). Stronz said this pipeline was constructed after Appellant's sale of surface to Gulfport. He said the "Stronz well pad" began production before the execution of the March 27, 2015 right of way agreement. The "Scott well pad" was not built, and a second pipeline was not constructed under the agreement.

**{¶8}** On June 15, 2015, approximately 80 days after executing the right of way agreement, Appellant executed a limited warranty deed conveying to Gulfport the 78.54 acre parcel (and a 27.64 acre parcel) for $800,000. After excepting all previously conveyed coal and mining rights, Appellant's deed to Gulfport provided:

EXCEPTING AND RESERVING to the GRANTOR herein by this conveyance, all rights to the oil and gas below the surface of the subject land.

UNDER AND SUBJECT to any and all exceptions, reservations, restrictions, easements, rights of way, highways, estates, covenants and conditions apparent on the premises or shown by instruments of record.

**{¶9}** A purchase and sale agreement was executed the same day, providing for Appellant's sale and Gulfport's purchase of "the surface estate of the property, subject to the terms and condition set forth in this Agreement." It then specified the conveyance of:

the Property, together with all privileges, easements, rights of way and other appurtenant rights relating to the Property, and any existing structures or improvements located on the Property, *excluding and reserving to [Appellant] any and all oil, gas, and mineral rights in the Property* but specifically including all riparian rights running or otherwise associated with the Property. *[Appellant] also reserves and retains the right to receive all sums payable to "Owner" with respect to the first and second pipeline damage payment under that certain Easement Agreement*, between Hills and Hollers Farm, LLC (as "Owner) and Ohio Gathering Company, L.L.C. (as "Grantee") dated as of February 27, 2015. (Emphasis added.)[2]

An integration clause stated the document constituted the entire agreement, and a "No Merger" clause provided: "All warranties, representations, obligations, covenants and agreements contained herein shall survive the Closing and shall not be merged with any instruments delivered by Seller to Buyer at the Closing."

{¶10} On March 16, 2016, Appellant provided written notice to Appellee claiming breach of the "charges to the flow of gas" clause in the addendum to the right of way agreement. Appellant alleged, "hundreds of thousands of dollars have been withheld from the royalty stream" which were "taxes, charges and market enhancements charged to the flow of gas or liquids" from the pertinent well pad that were the responsibility of Appellee.[3] On June 13, 2016, Appellee recorded a release of the right of way agreement, declaring it was releasing its rights in the agreement to the named grantor, "Gulfport Energy Corporation, successor in interest to Hills and Hollers Farm, LLC."

{¶11} Appellant filed a complaint against Appellee in October 2016 and an amended complaint on December 21, 2016, setting forth five causes of action: declaratory judgment, breach of the right of way agreement, accounting, fraud in the

---

[2] Appellant received the payment for the first pipeline *prior* to the execution of the purchase and sale agreement conveying the property to Gulfport. Also, the right of way agreement containing the easement was dated March (not February) 27, 2015.

[3] Appellant originally seemed to be complaining for all mineral owners whose gas was flowing from the named well pads (the pooled unit owners) but no longer makes such a broad contention.

Case No. 17 BE 0040

inducement, and quiet title. The allegations in Appellant's complaint retained on appeal focus on Appellant's desire to enforce the "charges to the flow of gas" clause in the addendum to the right of way agreement. Appellant alleged the clause was a personal covenant which prohibited Appellee from billing (Gulfport) for its services (gathering, compressing, transporting, etc.) charged to the flow of gas from the pertinent well pad; it was Gulfport, as the producer, who was actually billed by Appellee.

{¶12} Appellee filed an answer raising affirmative defenses, including: lack of standing as Appellant no longer owned the property subject to the right of way; lack of consideration as Appellant no longer owned the surface and the agreement was made due to Appellant's ownership of the surface; waiver by selling the property and failing to reserve the right to enforce the disputed provisions of the right of way; any real property covenants running with the land could only be enforced by the owner of the property subject to the right of way; and the right of way agreement allowed for Appellee to file a release, which Appellee did file. (The answer also claimed Appellee did not deduct from Appellant's royalties as Appellee was not the lessee and the "charges to the flow of gas" clause did not obligate Appellee to "reimburse" Appellant for deductions by Gulfport.)

{¶13} On June 9, 2017, Appellee filed a motion for summary judgment, presenting three arguments: (1) Appellant does not own the property and thus cannot enforce the provisions in the right of way; (2) Appellant misinterprets the "charges to the flow of gas" clause in an overly broad manner which would lead to an absurd result; and (3) the May 27, 2015 right of way was released on June 13, 2016, as permitted by its terms, which relieved Appellee of any further obligations under said right of way.

{¶14} As for the first argument, Appellee alleged Appellant had no standing or right to enforce the terms of the right of way agreement after Appellant conveyed the property subject to the right of way to Gulfport. Appellee pointed to the purpose of the right of way agreement as expressed in the granting clause and concluded the agreement was based on Appellant's ownership of the surface and only encumbered the surface estate. Appellee urged the right of way was unconcerned with mineral rights and Appellant's retention of the mineral rights upon the sale of the property to Gulfport did not maintain continuing rights under the terms of the right of way agreement. Appellee argued the limited warranty deed to Gulfport excepted and reserved only the minerals and made the conveyance subject to easements and rights

of way without reserving rights under the 2015 right of way. Appellee concluded the lack of ownership of the burdened parcel plus the lack of an affirmative reservation of rights under the right of way resulted in a lack of standing to enforce the provisions in the right of way.

{¶15} Appellant's September 12, 2017 response argued its claims were not extinguished by its conveyance of the property to Gulfport as the "charges to the flow of gas" clause was an independent and collateral covenant from the primary object of the right of way agreement. Besides noting Appellant retained mineral rights in the deed to Gulfport, Appellant also relied on the purchase and sale agreement executed with the deed, noting it contained a "no merger" clause and retained the right to any pipeline damage payment due from Appellee (which Appellant acknowledged referred to the $180,000 which could be due under the 2015 right of way agreement if a second pipeline was constructed thereunder). Appellant urged the "charges to the flow of gas" clause was not dependent upon its ownership of the surface and was designed to preserve the value of the mineral estate. Appellant argued an independent and collateral covenant does not run with the land and is thus excepted from the merger by deed doctrine. Appellant concluded: "In light of the fact that the nature of the Paragraph 13 Covenant is independent and collateral to the 2015 H&H Right of Way, that covenant was not merged into the ROW and not merged into the Limited Warranty Deed."

{¶16} Appellant believed Appellee was relying on a merger doctrine and was under the impression Appellee was arguing: the recorded right of way should be considered without the addendum; the recorded deed to Gulfport should be considered without the purchase and sale agreement; and/or the "charges to the flow of gas" clause for the addendum to the right of way agreement merged into the deed to Gulfport. However, Appellee's summary judgment reply explained how the Gulfport purchase and sale agreement was not disclosed to it in discovery until August 2017. Appellee stated the newly-revealed purchase and sale agreement buttressed its position on Appellant losing the right to enforce the clause as Appellant clearly reserved the right to any future payment for a second pipeline but did not contractually retain the right to enforce any other obligation in the right of way agreement. Appellee emphasized its motion *did not* contend: the incorporated addendum merged into the recorded right of way; the

purchase and sale agreement (with its no merger clause) merged into the recorded deed to Gulfport; or the "charges to the flow of gas" clause merged into a deed to a different party. Appellee urged the doctrine of merger by deed had no relevance and thus an exception to the doctrine for independent and collateral covenants had no relevance.

{¶17} In support of its second summary judgment argument, Appellee argued the "charges to the flow of gas" clause did not require it to reimburse Appellant for Gulfport's deductions from royalty payments under the Appellant's lease with Gulfport. Appellee said: the right of way agreement contained an integration clause; the parties' intent cannot be ascertained by parol evidence of what Stronz demanded; a signed receipt evidenced payment of the consideration, which was separately set forth; the "charges to the flow of gas" clause is the last sentence of paragraph 13 and must be read in context; the pertinent clause did not use the word "reimburse" as did the prior sentence in the same paragraph, which dealt with any real estate tax increase directly attributable to the pipeline; the pertinent clause did not refer to a lease or royalties; it functioned as a redundancy so the easement grantor would not incur additional costs as a result of the pipeline activities on the property; the contracting parties could not amend a lease with a non-party; and there was no evidence the Stronz well pad flowed into a pipeline built under the 2015 right of way.

{¶18} Appellant responded by stating communications demonstrated the clause was bargained for, as opposed to mistakenly included, after initially being rejected by Appellee when offered by Appellant during negotiations. Appellant also cited to communications suggesting that upon Appellant's notice of breach, an employee of Appellee read the language of the "charges to the flow of gas" clause consistent with Appellant's interpretation. Appellee replied this parol evidence cannot be used to show intent if the language is unambiguous.

{¶19} Concerning the third argument in its summary judgment motion, Appellee noted the right of way agreement gave it the unfettered right to terminate the right of way and easement rights granted to it by filing a release and the agreement contained no survival provision extending any provision beyond termination and release. Appellee recorded a release on June 13, 2016, surrendering its rights to Gulfport as the owner of the property and the successor to Appellant. Appellant's response argued the release

could not extinguish the "charges to the flow of gas" clause as there was nothing in the nature of the clause making its continuing efficacy dependent upon the existence of the right of way agreement. Appellant relied on the same reasoning it used to support the argument that it could still enforce the "charges to the flow of gas" clause after the sale, i.e., it was an independent and collateral covenant as an exception to the merger by deed doctrine.

{¶20} At a hearing on the summary judgment motion, Appellant continued to characterize Appellee's argument (about the effect of Appellant's deed transferring the property to Gulfport) as an argument on merger by deed (or merger by other recordation). (Tr. 17). Appellant urged the "charges to the flow of gas" clause had nothing to do with the surface and was an independent collateral covenant. (Tr. 24).

{¶21} In an October 2, 2017 judgment entry, the trial court granted Appellee's motion for summary judgment. The court held: the last sentence in paragraph 13 was not personal to Appellant and was not an independent and collateral covenant; Appellant had no standing to enforce this sentence because Appellant conveyed the property subject to the right of way without reserving any interest in the disputed clause; the right of way agreement was fully released by the release recorded on June 13, 2016; and Appellant lacking standing to assert the five causes of action. Appellant filed a timely notice of appeal.

## GENERAL LAW: SUMMARY JUDGMENT, STANDING, EASEMENTS

{¶22} Summary judgment can be granted when there remains no genuine issues of material fact and reasonable minds can only conclude the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). The movant has the initial burden to show there is no genuine issue of material fact. *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 10, citing *Dresher v. Burt*, 75 Ohio St.3d 280, 294, 662 N.E.2d 264 (1996). The non-moving party then has a reciprocal burden. *Id.* The non-movant's response, by affidavit or as otherwise provided in Civ.R. 56, must set forth specific facts showing there is a genuine issue for trial and may not rest upon mere allegations or denials in the pleadings. Civ.R. 56(E). The court is to consider the evidence and all reasonable inferences to be drawn from the evidence in the light most

favorable to the non-movant. *See, e.g., Jackson v. Columbus*, 117 Ohio St.3d 328, 2008-Ohio-1041, 883 N.E.2d 1060, ¶ 11.

**{¶23}** Still, the material issues of each case depend on the substantive law. *Byrd*, 110 Ohio St.3d 24 at ¶ 12. "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*, quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). We consider the propriety of granting summary judgment de novo. *Comer v. Risko*, 106 Ohio St.3d 185, 2005-Ohio-4559, 833 N.E.2d 712, ¶ 8. Whether a party has established standing to bring an action is also generally a question of law which an appellate court reviews de novo. *Moore v. Middletown*, 133 Ohio St.3d 55, 2012-Ohio-3897, 975 N.E.2d 977, ¶ 20.

**{¶24}** An evaluation of standing involves the plaintiff's right to make a legal claim or seek judicial enforcement of a duty. *Wells Fargo Bank, N.A. v. Horn*, 142 Ohio St.3d 416, 2015-Ohio-1484, 31 N.E.3d 637, ¶ 8. Standing requires the plaintiff to assert a personal stake in the outcome of the lawsuit. *Bank of Am., N.A. v. Kuchta*, 141 Ohio St.3d 75, 2014-Ohio-4275, 21 N.E.3d 1040, ¶ 23. The general elements of standing are injury, causation, and redressability. *Moore*, 133 Ohio St.3d 55 at ¶ 22. The particulars of standing are dependent upon the nature and source of the claim. *Id.* at ¶ 23. For instance, a bank lacks standing if it had no interest in the promissory note and mortgage at the time a foreclosure complaint was filed. *See Horn*, 142 Ohio St.3d 416. More specifically, an entity must have an interest in any easements on the property in order to have standing to bring a declaratory judgment to determine the existence or extent of any easements. *See Bank of America v. Stevens*, 4th Dist. No. 16CA24, 2017-Ohio-9040, ¶ 1 (where mortgage conveyed the property and all easements that are part of the property, the bank who was assigned the mortgage had standing to determine whether there was an implied driveway easement).

**{¶25}** Here, the question of whether the plaintiff has the right to enforce a clause in a right of way agreement or to have the clause interpreted in a certain manner depends on whether the plaintiff can still enforce a continuing obligation in the right of way agreement after selling the burdened property. The question of what precise rights the "charges to the flow of gas" clause actually granted was not addressed by the trial court, and Appellee proceeds on a theory that even if it means what Appellant contends,

Appellant conveyed away its right to enforce it. Appellant's reply suggests the trial court made a merit determination that the clause was not an independent covenant in order to construe the decision as entailing a lack of standing. Either way, we are answering the same legal question, and our review is de novo.

**{¶26}** On appeal, Appellant does not use the term personal covenant. However, the allegation in Appellant's amended complaint was that the "charge to the flow of gas" clause was a personal covenant. Whether a covenant is real or personal can determine whether it runs with the land so that the liability to perform or the right to take advantage of its benefits passes to the assignee of covenantee. *Lone Star Steakhouse & Saloon of Ohio, Inc. v. Quaranta*, 7th Dist. No. 01 CA 60, 2002-Ohio-1540, ¶ 15-16 (a real covenant runs with the land as it is related to, annexed to, inherent in, or connected with the land). A restrictive covenant runs with the land if: it was intended to bind successors at the time the estate was created; it "touches and concerns" the land; and there is privity. *Id.* at ¶ 18. "In order for the benefit of a covenant to run, the promisee's legal relations in respect to the land in question must be increased * * *." *Peto v. Korach*, 17 Ohio App.2d 20, 24, 244 N.E.2d 502 (8th Dist.1969) (cost of maintaining easement ran with the transfer of the dominant estate binding new easement owner).

**{¶27}** A personal covenant usually does not run with the land as it is for the personal use and enjoyment of the land by the original parties to the covenant. *Lone Star*, 7th Dist. No. 01 CA 60 at ¶ 15, 17.[4] Certain personal covenants related to land can be extinguished upon a sale of property by the covenantee. *See, e.g.*, Martin, *Property-Enforcement of Personal Covenants Against Subsequent Grantees*, 1 Wm. & Mary Rev.Va.L. 92 (1951) (the grantee of a covenantee enjoys none of the benefits of a personal covenant because the personal covenant is extinguished when the covenantee's interest in the land is terminated). Appellee does not present an argument akin to the latter premise in support of summary judgment. Instead, Appellee maintains that if the disputed clause remained functional after the sale, it was because it passed with the servient estate as one of the terms of the right of way agreement containing the easement. This may be due to Appellant's reliance on its retention of the mineral estate as a key fact.

---

[4] *Compare Gillen-Crow Pharmacies, Inc. v. Mandzak,* 5 Ohio St.2d 201, 215 N.E.2d 377 (1966) (restrictive personal covenant in lease dealing with covenantor-lessor's other realty could be enforced as an equitable servitude against covenantor's sublessee who had notice).

Case No. 17 BE 0040

{¶28} The clause at issue is a "special condition" in an agreement conveying a right of way and easement. An easement is "the grant of a use on the land of another." *Alban v. R.K. Co.*, 15 Ohio St.2d 229, 231-232, 239 N.E.2d 22 (1968). When an easement is created by an express grant, the easement's extent and limitations depend on the language in the grant. *Id.* at 232. When the terms of an easement are clear and unambiguous, a court cannot create new terms by finding an intent not expressed in the language used. *See Alexander v. Buckeye Pipe Line Co.*, 53 Ohio St.2d 241, 246, 374 N.E.2d 146 (1978).

{¶29} Although no longer a requirement to create an assignable interest in this state, words binding successors are indicative of intent. The right of way agreement specifies the "grant shall be binding upon" and "shall inure to the benefit" of the "heirs, executor, personal representatives, successors and assigns" of both parties. And, in warranting the right to fully transfer and convey, the grantor bound "itself, its heirs, executor, administrators, and assigns to warrant and forever defend said right * * *." The right of way agreement provided the grantee the right to assign the grant in whole or in part, which would involve the transfer of the benefit of the easement. *See Junction RR. Co. v. Ruggles*, 7 Ohio St. 1 (1875) (railroad right of way over one parcel is analogous to an appurtenant easement as it is appurtenant to other parcels containing the right of way); *Consolidated Gas Transmission Corp. v. Miller,* 5th Dist. No. 378 (Apr. 25, 1988) (easements in gross of a commercial character, such as gas pipelines and railroad rights-of-way, are alienable property interests); *Geffine v. Thompson*, 76 Ohio App. 64, 66, 62 N.E.2d 590 (8th Dist.1945) (even if a pipeline easement had the attributes of an easement in gross, it is assignable under *Ruggles*).[5]

{¶30} Regardless of whether the *benefit of owning* the pipeline easement is in gross and personal (yet assignable due to the above case law and the assignment clause), the burden of the easement remains with the servient estate if it is recorded or

---

[5] Traditionally, easements appurtenant ran with the dominant estate automatically; easements in gross were not transferrable by the easement owner so the benefit of being able to use the servient estate was personal to the grantee of the easement (as there was a servient estate but no dominant estate to which the easement could be appurtenant). *See, e.g., Shields v. Titus*, 46 Ohio St. 528, 540, 22 N.E. 717 (1889) (appurtenant easement runs with the benefitted estate); *Junction RR. Co. v. Ruggles*, 7 Ohio St. 1 (1875) (railroad right of way over one parcel is analogous to an appurtenant easement). The change to this law for railroads, pipelines, utilities, and other commercial activity is well-settled. The traditional rule dealt with the passing of the dominant estate; here, the parties are addressing the effect of the passing of the servient estate.

Case No. 17 BE 0040

the successor otherwise had notice. *See, e.g., Johnson v. Waterville Gas & Oil Co.*, 6th Dist. No. L-08-1143, 2009-Ohio-4061, ¶ 16 (unrecorded gas pipeline easement is not enforceable against a bona fide purchaser for value who has no actual or constructive notice of such easement). In other words, the pipeline right of way and easement is not eliminated by the sale of the servient estate. Appellant does not dispute that the burden of the pipeline right of way and easement would run with the servient estate. *See generally Shields v. Titus*, 46 Ohio St. 528, 540, 22 N.E. 717 (1889) (although dealing with an appurtenant easement, "a grant of the servient estate carries with it the burdens imposed upon it by the grantor, and the grantee takes it with all those burdens which appear, at the time of the sale, to belong to it" and the new servient owner will "stand in the shoes" of the former owner "and hold their lands with the qualities and burdens impressed upon them at the time of their purchase"). Appellant's appeal revolves around one clause in the right of way agreement, which it attempts to isolate as an "independent covenant."

ASSIGNMENT OF ERROR ONE:  CONVEYANCE OF SURFACE

**{¶31}** Appellant sets forth two assignments of error; one dealing with the effect of the conveyance of the surface, and one dealing with the effect of the release. The first assignment of error provides:

"The Trial Court Erred By Granting Summary Judgment To Defendant On The Basis That The Last Sentence of Paragraph 13 * * * Was Not A Covenant That Was Independent and Collateral To Both The Conveyance Of The Pipeline ROW To OGC And The Conveyance Of the Surface Estate To Gulfport."

**{¶32}** We initially address Appellant's query as to how Appellee could contend the parol evidence rule bars negotiations to prove the intent behind and meaning of the "charges to the flow of gas" clause but was then able to use the conveyance to Gulfport as evidence to bar Appellant's claims. First, we note Appellee's summary judgment motion alternatively argued the intent of the disputed clause must be gleaned by the language of the right of way agreement and addendum, stating when contract terms are clear and unambiguous, the court cannot create a new contract by finding an intent not expressed in the plain language of the contract. *Citing Hamilton Ins. Serv., Inc. v. Nationwide Ins. Cos.*, 86 Ohio St.3d 270, 714 N.E.2d 898 (1999). *Compare Graham v.*

*Drydock Coal Co.*, 76 Ohio St.3d 311, 313-314, 667 N.E.2d 949 (1996), citing *Shifrin v. Forest City Ent., Inc.*, 64 Ohio St.3d 635, 638, 597 N.E.2d 499 (1992) (in determining the intent of parties to the deed, extrinsic evidence is admissible if the language is unclear or ambiguous or if circumstances surrounding the agreement give the plain language special meaning). Appellee argued the court should not consider evidence of Appellant's reasons for wanting the "charges to the flow of gas" clause or whether the lack of the clause would have been a deal-breaker for Appellant. Similarly, Appellee argued against using parol evidence of negotiations and the process of incorporating the clause into the contract.

**{¶33}** Pursuant to the parol evidence rule, a final integrated contract cannot be modified, contradicted, or supplemented by prior written agreements or by prior or contemporaneous oral agreements. *Galmish v. Cicchini*, 90 Ohio St.3d 22, 27, 734 N.E.2d 782 (2000) (unless the evidence is used to show fraud, mistake, or other invalidating cause). The rule protects the integrity of written contracts by ensuring stability, predictability, and enforceability of finalized written agreements. *Id.* The rule prevents a party from introducing extrinsic evidence of negotiations occurring before or while the agreement was being finalized. *Bellman v. American Internatl. Group*, 113 Ohio St.3d 323, 865 N.E.2d 853, 2007-Ohio-2071, ¶ 7. *See, also, TRINOVA Corp. v. Pilkington Bros. P.L.C.*, 70 Ohio St.3d 271, 275, 638 N.E.2d 572 (1994) (contract integration calls for a prior understandings to be rejected in favor of a subsequent one containing a complete agreement).

**{¶34}** However, the parol evidence rule does not bar evidence of a subsequent agreement, modification of an agreement, *or waiver of an agreement by language or conduct*. *Paulus v. Beck Energy Corp.*, 7th Dist. No. 16 MO 0008, 2017-Ohio-5716, ¶ 41. Additionally, the parol evidence rule does not apply to the introduction of a subsequent agreement between one party and a third party to determine issues *unrelated to the meaning of a contract term*. For instance, a bank issuing a note and mortgage may be shown to lack standing to file a foreclosure complaint where undisputed evidence demonstrates the bank sold the note and assigned the mortgage prior to filing the complaint. *See generally Horn*, 142 Ohio St.3d 416 (bank's proof of standing can be submitted at summary judgment stage).

Case No. 17 BE 0040

{¶35} Where a grantor of a right of way and easement sells the property subject to such burdens and then sues for breach of a term in the right of way agreement, the presentation of evidence that a sale occurred (in order to show a lack of standing or extinguishment of a right) does not involve the parol evidence rule. Even if evidence of the subsequent sale cannot be presented for the purpose of interpreting the terms of the prior right of way, it can be presented for the purpose of determining whether the plaintiff conveyed away his rights under the right of way agreement or otherwise can no longer enforce obligations within the agreement.

{¶36} For purposes of appeal, Appellee's argument is essentially: even if the clause means what Appellant believes, the clause is no longer enforceable by Appellant due to the sale of the encumbered property. Appellant continues to frame Appellee's arguments as the involving doctrine of merger by deed (or merger by recordation of the right of way agreement), while Appellee continues to explain why the doctrine was not applicable or utilized.

{¶37} Under the merger by deed doctrine, the general rule is that the sales contract is merged in the deed, and no cause of action exists upon the prior agreement. *Fuller v. Drenberg*, 3 Ohio St.2d 109, 111, 209 N.E.2d 417 (1965) ("the plaintiffs' reliance upon the contract is unavailing because the contract was merged in the deed when the deed was delivered and accepted without qualification, and therefore, no cause of action upon the prior agreement thereafter existed."). Appellant relies on the exception to the merger by deed principle, which may be applied when the purchase contract creates rights collateral to or independent of the conveyance. *See Miller v. Cloud*, 7th Dist. No. 15 CO 0018, 2016-Ohio-5390, 76 N.E.3d 297, ¶ 72 (listing exceptions). For instance, regarding consideration, an "obligation to pay the purchase money was not merged by the deed * * *." *Reid v. Sycks*, 27 Ohio St. 285, 290 (1875). Yet, "agreements in purchase contracts to pay for damage to the property after closing are regarded as relating to the use, occupancy, or enjoyment of the land and are therefore not collateral." *Westwinds Dev. Corp. v. Outcalt*, 11th Dist. No. 2008-G-2863, 2009-Ohio-2948, ¶ 82

{¶38} Appellant urges the "charges to the flow of gas" clause did not "merge" as it is independent of and collateral to the right of way and easement granted to Appellee on March 27, 2015 and then conveyed to Gulfport by the June 15, 2015 sale of the

property. Appellant invokes principles expressed in cases applying this merger by deed exception, such as: agreements in a contract that are collateral to and independent of the main purpose or principal object of the transaction are not intended to be merged in the deed; independent and collateral covenants do not concern title, occupancy, size, quantity, enjoyment, or possession of the interest in land conveyed; and independent, collateral covenants do not create conditions on which the conveyance is contingent. *See, e.g., Medeiros v. Guardian Title & Guaranty Agency, Inc.*, 57 Ohio App.2d 257, 387 N.E.2d 644, 646 (8th Dist.1978) (seller's agreement to pay special assessments certified to the county auditor as of the date of title transfer was not merged into the deed, and buyer can sue for a breach of that agreement), citing *Mayer v. Sumergrade*, 111 Ohio App. 237, 167 N.E.2d 516 (8th Dist.1960) (provision in sales contract warranting there were no assessments on property did not "run with the land" but was a collateral promise which was not merged into the deed and its breach allowed the purchaser to sue the vendor). *See also Rhenish v. Deunk*, 7 Ohio App.2d 225, 219 N.E.2d 822 (8th Dist.1963) (covenant requiring seller to pay special assessments chargeable against the property as of the date of the deed's filing was not eliminated by merger since the provision was collateral in character, citing a sentence from the syllabus in *Mayer* without mentioning whether it would run with the land).

**{¶39}** We note these cases involved a breach of warranty which occurred at the time of the sale or concerned an encumbrance existing at the time of the sale. *See generally Stockman v. Yanesh*, 68 Ohio St.2d 63, 65, 428 N.E.2d 417 (1981) ("The law is well settled in Ohio that a covenant against encumbrances is breached as soon as made if an encumbrance in fact exists."). We also note, regardless of the Eighth District's observation in dicta that an assessment clause did not "run with the land," the issue before that court was the exception to the merger by deed doctrine involving an independent and collateral covenant in the purchase agreement. And, contrary to this dicta, a covenant of warranty against encumbrances is a real covenant that runs with the land. *Lone Star*, 7th Dist. No. 01 CA 60 at ¶ 16. This is well-settled in Ohio. In a case involving responsibility for real estate taxes, the Supreme Court ruled a covenant against encumbrances (and a covenant of warranty) will run with the land. *Van Dyke v. Rule*, 49 Ohio St. 530, 533, 31 N.E. 882 (1892) (finding it was "well-settled in this state * * * that the covenant against incumbrances is a real covenant which runs with the

land"), citing *Foote v. Burnet*, 10 Ohio 317 (1840) ("the covenant against incumbrances * * * is made for the benefit of the grantee in respect to the land.  It is not understood as a contract, in which the immediate parties are alone interested, but as intended for the security of all subsequent grantees. * * * a covenant against incumbrances is a covenant running with the land until the incumbrances are removed").

{¶40} In any event, the cited appellate cases did not involve a suit by a former surface owner to enforce a provision in a right of way agreement conveying an easement in the surface estate that allegedly imposed an obligation on the grantee of the right of way to be responsible for certain future charges.  As Appellee emphasizes, the cases Appellant relies upon involve the question of whether a promise made to the buyer in the contract merged into and was eliminated by the buyer's deed where the deed did not repeat the promise.  However, Appellee did not argue any obligation in a contract merged into a recorded document, and the trial court did not find the principle applicable either.  Whether a party can enforce a provision in their own contract after they accepted a deed lacking the disputed provision is not the same issue as whether a party to a contract encumbering the surface of the estate by a pipeline right of way and easement can still enforce a certain provision therein after selling the property burdened by the easement.

{¶41} Appellant relies on the "charges to the flow of gas" clause in the unrecorded addendum to the recorded right of way agreement, which reads:  "Grantee shall be responsible for all other taxes, charges and market enhancements charged to the flow of gas or liquids from the Scott well pad or Stronz well pad."  Although the recorded right of way agreement contained an integration clause (providing no other statements can add to or change the terms of the agreement), it then provided:  "This Right of Way Agreement is made further subject to the terms and provisions contained in that certain unrecorded Addendum by and between GRANTOR and GRANTEE herein, executed of even date herewith."  The recorded right of way agreement specifically incorporated the unrecorded and contemporaneously executed addendum, and the addendum recited it was a part of the right of way agreement.  The documents were one contract.  The parties agree this did not result in merger by deed (or merger by recordation of the right of way agreement).

Case No. 17 BE 0040

{**¶42**} Contrary to Appellant's suggestion, Appellee's argument (that Appellant no longer had the right to enforce the right of way agreement due to the sale of the burdened land) did not implicitly equate to an argument that the "charges to the flow of gas" clause in the addendum ceased to exist by the recordation of the right of way which conveyed an easement for a pipeline. Likewise, Appellee does not implicitly argue the application of the merger by deed doctrine or suggest the "charges to the flow of gas" clause of the addendum merged into the recorded limited warranty deed (wherein Appellant conveyed the property to Gulfport while reserving mineral rights). Such a merger by deed argument would be nonsensical as the addendum (executed by Appellant and Appellee) is not the contract culminating in the deed to Gulfport. An evaluation of merger by deed can arise in a case where the purchase and sale agreement for realty is alleged to have merged into the subsequently recorded deed conveying *that* property. Here, the recorded deed to Gulfport was executed on June 15, 2015, and the purchase sale and agreement of that same date specifically contained a "no merger" clause, stating its terms would "survive the Closing and shall not be merged with any instruments delivered by Seller to Buyer at the Closing."[6] Appellee does not argue to the contrary.

{**¶43**} In sum, the addendum was part of the right of way agreement. No one suggested it was erased by being merged into the recorded right of way agreement (or into a subsequent deed conveying the property to another party). As the doctrine of merger by deed was not argued or applied in this case, the exceptions to the doctrine are inapplicable. Appellant's argument is based upon an inapplicable merger by deed doctrine and its exceptions. Although there may exist support for Appellant's underlying position, it is not our function to comb the case law, combine various principles, and

---

[6] One term in the Gulfport purchase and sale agreement was the clause wherein Appellant "reserves and retains the right to receive all sums payable to 'Owner' with respect to the first and second pipeline damage payment under that certain Easement Agreement * * *." Contrary to part B of Appellant's first assignment of error, Appellee does not suggest Appellant could not retain the right to any future payment for a second pipeline when conveying the property to Gulfport. It appears this portion of Appellant's brief was copied from its opposition to summary judgment, which was filed *before* Appellee explained that it had not received the purchase sale and agreement in discovery by the time it moved for summary judgment. Appellee merely pointed out, in its reply below and in its brief on appeal, the agreement showed Appellant did not retain other rights under the right of way upon the sale to Gulfport and did not establish an alternative avenue for standing. Appellant does not argue the reservation of the right to the second pipeline payment preserved its rights under the "charges to the flow of gas" clause.

Case No. 17 BE 0040

construct an overriding argument for an appellant based on the particular facts existing in the case.

{¶44} Still, the ultimate question is whether the "charges to the flow of gas" clause in a right of way agreement was enforceable against Appellee by Appellant after Appellant's sale of the property to Gulfport. Appellee states Appellant conveyed the servient estate encumbered by the right of way and easement and thus lost the right to enforce Appellee's continuing obligations under the right of way agreement (contractually retaining only the right to any payment for a second pipeline). Appellee contends the "charges to the flow of gas" clause was a term of the right of way agreement running with the servient estate, which was the surface conveyed by Appellant to Gulfport. Appellee therefore concludes Appellant lacks standing to enforce the terms of the right of way agreement, which included its addendum.

{¶45} As aforementioned, Appellant does not dispute the pipeline right of way and easement were intended to run with the servient estate. Within its argument against the merger by deed doctrine, Appellant states the "charges to the flow of gas" clause was an independent and collateral covenant benefitting Appellant regardless of continued ownership of the land burdened by the pipeline (and regardless of any future release). Appellant observes that although it conveyed to Gulfport the property subject to the right of way and easement, Appellant retained mineral rights and the "charges to the flow of gas" clause deals with the gas and liquids flowing from the Stronz well pad, which includes Appellant's minerals. We note Appellant does not specify an argument that the clause "ran with" the mineral estate, which it retained upon conveying the property burdened by the right of way agreement to Gulfport. The clause in the pipeline easement wherein the grantee took responsibility for future charges dealt with severed minerals. *See Schlabach v. Kondik*, 7th Dist. No. 16 HA 0017, 2017-Ohio-8016, __ N.E.3d __, ¶ 23 ("Unsevered minerals are real property; however, minerals become personal property when severed from the land"), citing *Back v. Ohio Fuel Gas Co.*, 160 Ohio St. 81, 88-89, 113 N.E.2d 865 (1953). *See also Terteling Bros., Inc. v. Glander*, 151 Ohio St. 236, 243, 85 N.E.2d 379 (1949) ("Although land and minerals in place upon or beneath the land are real property even though separately owned, the minerals become personal property immediately upon severance.").

Case No. 17 BE 0040

{¶46} Nevertheless, the clause dealt with pipeline activities at the surface, and the agreement as a whole was entered as a result of Appellant owning the surface. The right of way agreement was not dependent upon ownership of the mineral estate, but ownership of the surface estate was imperative. Appellant does not convincingly explain why the burdens of the easement would remain with the servient estate but the alleged continuing benefit would not under the circumstances of this case. The conveyance of a pipeline easement (and the flow of gas into a pipeline) was commercial as opposed to personal. The disputed clause was one of the continuing terms of the right of way and easement. It was an uncertain and future obligation for the grantee to take responsibility for several items that may be charged (or allegedly reimburse for such charges) when particular substances are moved from the surface of the servient estate by the easement grantee. According to Appellant's own position, it was a future benefit provided to the servient estate owner as a result of the creation of the servitude.

{¶47} Appellant suggests the clause, which was executed in an agreement for a right of way and easement at the time Appellant owned both the surface and the minerals, benefitted his personal mineral rights even though the easement payments were the result of his surface ownership. However, later acts by the property owner (severance and retention of the minerals upon sale of the servient estate) would not convert the clause to a personal contract entitling the former property owner to a benefit for life without any of the burdens of the pipeline right of way and easement. *See In re Energytec, Inc.*, 739 F.3d 215, 225 (5th Cir.2013) ("The possibility that covenants will expire by the force of events is no definitional obstacle to calling them covenants running with the land."). Thus, our analysis does not change due to the possibility the former owner's acts before sale may eliminate the benefit of the clause to a new property owner, such as: if the clause means what Appellant says, but the new owner obtained no interest in the reserved minerals (although, the new owner here was also the lessee.) In *Energytec*, the fact the defendant could abandon the pipeline to avoid a covenant to pay transportation fees did not mean the covenant did not run with the land. *Id.* (distinguishing its prior case involving allocation of environmental contamination costs which were equated with an encumbrance, but located in a state which does not consider a covenant involving encumbrances as running with the land).

{¶48} In the same paragraph as the "charges to the flow of gas" clause is an obligation for the property owner to be responsible for real estate taxes and for the grantee to reimburse the owner for any future increase attributable to the pipelines. These obligations will inure to the benefit of the servient estate owner's successors and assigns. A covenant for the grantee to be responsible for certain future taxes and charges to the flow of gas would likewise inure to the benefit of the grantor's successors and assigns. The disputed clause must be read in context; it is contained in the same numbered special condition as the real estate clause and refers to the preceding sentences on real estate taxes as it uses the phrase "other taxes." The disputed clause is more akin to a future real estate tax obligation (attributable to the pipeline) than to an agreement to pay the purchase price at closing.[7]

{¶49} Both the burdens from and the continuing obligations in the right of way agreement (which includes the terms of its addendum) flow with the property burdened by the right of way and easement. Appellant sold the property and conveyed the terms of the right of way agreement to Gulfport, e.g., "Seller agrees to purchase from Seller the Property, together with all privileges, easements, rights of way and other appurtenant rights related to the Property * * *." With the exception of any payment for a second pipeline, no rights contained in the right of way agreement were retained in the sale. Appellant thus lost the right to enforce paragraph 13 and its "charges to the flow of gas" clause.

{¶50} Where the grantee of a pipeline right of way and easement takes on an obligation in the agreement forming the servitude to be responsible for certain future taxes and charges incurred at the surface, this clause is inherent in the servitude created. At least, it is a dependent clause which is an incident of the easement as it was a continuing obligation that was part of the right of way agreement and was dependent upon the ownership of the property burdened by the agreement. In any case, the clause is no longer a right enforceable by Appellant after the sale of the servient estate.

---

[7] It has some similarities to a surface use payment. *See Fort Worth 4th St. Partners, L.P. v. Chesapeake Energy Corp.*, N.D. Tex. No. 3:14-CV-03871 (Nov. 28, 2016) (where the plaintiff sold the surface before a surface use payment came due and reserved the minerals, the court held the right to receive the payment ran with the surface as it was for the use of real property and "touches and concerns" the surface estate), *aff'd*, 882 F.3d 574 (5th Cir.2018).

{¶51} Lastly, we note a decision was not made on the precise meaning of the clause (e.g., what charges to whom, the lack of language on "reimbursement" for charges imposed by another party, whether the clause bound Appellee in what it charged to Gulfport who then charged Appellant, and whether the flow referred only to the substances entering the new pipeline). The parties did not brief these issues as the trial court did not reach them. We reviewed whether the clause was still enforceable by Appellant assuming arguendo it meant what Appellant claimed it meant.

{¶52} We also note Appellant's position on appeal appears to be all or nothing. That is, Appellant does not alternatively argue it could recover for a breach occurring in the 80 days between the execution of the right of way agreement and the sale of the property to Gulfport. Although Appellant's complaint suggests Appellee first breached the clause in February 2015, this is impossible as the agreement containing the clause was not executed until March 27, 2015. The sale to Gulfport occurred on June 15, 2015, and the first pipeline under the 2015 right of way was constructed thereafter. Apparently, Stronz entered an earlier right of way agreement with Appellee for a smaller pipeline in 2013. An unsupported statement in Appellant's response to the summary judgment motion mentioned gas from the Stronz well pad entered the pipeline installed under the earlier agreement. However, factual statements in the opposition to summary judgment must be supported by summary judgment evidence.

{¶53} At deposition, Stronz believed: production at the Stronz well pad began at an unknown time in 2015 before the March 27, 2015 right of way agreement was signed; the first royalty payment would have been issued by Gulfport 90 days after production began and may have been issued in May 2015; and Gulfport did not make deductions from the initial royalty payments. Notably, Appellant's opposition to summary judgment did not cite these portions of the deposition and attached only certain other pages in an appendix to its response to summary judgment. The non-movant must cite the trial court to the evidence showing a genuine issue. In any event, this testimony does not allege a breach regarding the "charges to the flow of gas" clause occurred prior to the Gulfport sale.

{¶54} Statements (apparently summarizing royalties and deductions) were attached to the complaint. Appellee's answer denied the averments in the paragraphs of the complaint citing to these statements and only generally admitted production from

the Stronz well pad began sometime in 2015. The statements were not identified at deposition or otherwise incorporated into summary judgment evidence by an affidavit for instance (and some contain text so small as to be unreadable). Furthermore, they were not relied upon in responding to summary judgment.

{¶55} In sum, the disputed clause was not enforceable by Appellant for alleged breaches after the sale to Gulfport, there is no argument concerning the time before the sale, and there was no summary judgment evidence showing a breach of the clause in the 80 days between the execution of the pipeline right of way agreement and the sale of the property to Gulfport. Appellant's first assignment of error is overruled, and the trial court's decision granting summary judgment is therefore affirmed.

## ASSIGNMENT OF ERROR TWO: RELEASE

{¶56} Appellant's second assignment of error contends:

"The Trial Court Erred By Granting Summary Judgment To Defendant On The Basis That Defendant's Unilateral Execution and Recording of a Release of the Pipeline ROW Granted By Plaintiff to Defendant, Which Was Undisputedly A Reaction To Plaintiff's Tender Of A Notice of Breach To Defendant, Was Effective To Excuse Defendant Of Any Legal Obligations To Plaintiff Arising From The Claimed Breach By Defendant Of The Paragraph 13 Covenant."

{¶57} The recorded release stated Appellee "hereby releases relinquishes and surrenders to the hereinafter named grantor, grantor's heirs, successors and assigns, all of the right, title and interest of Ohio Gathering Company, L.L.C., in and to that certain Right-of-Way Agreement granted in [description.]" It named the grantor as "Gulfport Energy Corporation, successor in interest to Hills and Hollers Farm, LLC." Allowing a future release, the recorded right of way agreement provided:

> *GRANTEE shall also have the right* to change the location of an installed pipeline and this right-of-way and easement as may be necessary or advisable from any condition or event beyond its control   * * * *and at any time to abandon and terminate all or any part of the right-of-way and easement rights granted herein, by filing a release of a same in the county records.* (Emphasis added.)

**{¶58}** Appellee argues: the release was permissible under the express terms of the right of way agreement; there was no survival provision in the agreement to save any continuing or future obligations in the agreement from a release; and all of its further obligations ceased when the release was recorded. *See Garlick v. Pittsburgh & Western RR.*, 67 Ohio St. 223, 235, 65 N.E. 896 (1902) (if the easement grant "contains no limit as to time, the easement will be perpetual, unless terminated by release or abandonment."). Appellant does not dispute Appellee's ability to release the right of way and easement under its express terms. Instead, Appellant argues Appellee is unable to unilaterally release the "charges to the flow of gas" clause because it is an independent and collateral covenant and thus its continuing efficacy is not dependent on the continuing existence of the 2015 right of way agreement. As Appellee points out, Appellant solely relies on the arguments made in the first assignment of error, setting forth no additional law as to the release and stating the second assignment of error "incorporates by reference the argument and law set forth above in support of its First Assignment of Error as if fully rewritten." Appellee responds this argument "is no more compelling the second time around."

**{¶59}** The trial court made an alternate holding that the right of way agreement was fully released by Appellee's June 13, 2016 recording of a release. As we affirmed the trial court's decision that Appellant lost the right to enforce a breach of the disputed clause in the right of way agreement after the June 15, 2015 sale to Gulfport, the trial court's alternative holding need not be reviewed. Due to our holding under the first assignment of error, the issue presented in the second assignment of error about the release (which occurred one year after the sale to Gulfport) is moot.

**{¶60}** Judgment affirmed.

Donofrio, J., concurs.
Waite, J., concurs.

Case No. 17 BE 0040

_____

For the reasons stated in the Opinion rendered herein, the assignments of error are overruled and it is the final judgment and order of this Court that the judgment of the Court of Common Pleas of Belmont County, Ohio, is affirmed.  Costs to be taxed against the Appellant.

A certified copy of this opinion and judgment entry shall constitute the mandate in this case pursuant to Rule 27 of the Rules of Appellate Procedure. It is ordered that a certified copy be sent by the clerk to the trial court to carry this judgment into execution.

## NOTICE TO COUNSEL

**This document constitutes a final judgment entry.**